PARISH OF BOSSIER *v.* L. F. STEELE, Sheriff—THE STATE, Intervenor.

The second section of the Act of the Legislature, approved the 19th of March, 1857, entitled, " An Act relative to the payment of expenses, incident to the prosecution of criminals," which declares that the fines and forfeitures to be collected, for the violations of the criminal laws of the State, shall be paid into the State treasury, is unconstitutional — being in violation of Article 115 of the Constitution, which provides that every law enacted by the Legislature shall embrace but one object, and that shall be expressed in the title.

APPEAL from the District Court of the Parish of Bossier, *Drew*, J. T. M. & B. F. Fort, for plaintiff. J. D. Watkins & Loony, for defendant and appellant.

MERRICK, C. J. The answer of the appellees, to the appeal, waives the motion to dismiss.

In March, 1857, judgment was rendered against *McKeown*, and his sureties, in his appearance bond, in a criminal prosecution, for $5000. This judgment was affirmed in July, 1857, by the Supreme Court. In August, 1857, the money was made on execution, and the present suit is a controversy between the State and the Parish of Bossier for the fund in the hands of the Sheriff. By the judgment of the court below, the Sheriff is directed to pay the money over to the parish, and the State appeals.

The constitutionality of the Act of the Legislature, approved 19th March, 1857, entitled, " An Act relative to the payment of expenses incident to the prosecution of criminals," is brought in question by this appeal. See Act, p. 187. It is contended that the statute violates Article 115 of the Constitution, which provides

55

that : " Every law enacted by the Legislature shall embrace but one object, and that shall be expressed in the title."

The Act in question embraces two sections. The first provides for the payment of all expenses incurred in criminal proceedings by the State, on the certificate of the clerk and presiding judge.

The second section declares : " That the fines and forfeitures to be collected for the violation of the criminal laws of the State, shall be paid into the State Treasury : provided that nothing contained in this section shall be so construed as to affect, in any manner, the process for collecting fines and forfeitures."

Heretofore the subject matter of the statutes has been provided for under two or three different heads, and by four different statutes. In 1852, the legislature treated the object embraced in the first section under the title of " An Act to change and regulate the expenses of criminal prosecutions throughout the State." Acts of 1852, p. 188.

In 1853 the object of the second section was provided for, by an Act entitled : " An Act to give to the parishes the fines and forfeitures collected hereafter for violations of the criminal laws." Acts, p. 295. In 1854, the same subject was revised by the Act entitled, " An Act concerning forfeited bonds, recognizances, and fines in criminal prosecutions throughout the State, (the parish of Orleans excepted) ; " and in 1855 by the seventy-first section of the Act relative to criminal proceedings. Acts, 1854, p. 111, and 1855, p. 162, 151.

It is, therefore, clear, that the statute of 1857 embraces matters divisible into two distinct *objects*, for it has been so considered and treated by the legislature in the several Acts above referred to. The question then arises—can the Act, (considered as a whole,) be construed to have a single object of a more general nature which is embraced in its title, and which fairly includes the separate subjects of the two sections ? It may be said that, inasmuch as the title of the Act is relative to *the payment* of the expenses incident to the prosecutions of criminals, that it fairly embraces any provision which tends to reimburse the State treasury the expenses, or to provide the State with money to pay the same. But this reply is not satisfactory ; for if it is so, the legislature might have passed the entire revenue laws, under the title of an Act relative to the payment of the expenses incident to the prosecution of criminals.

Again, suppose a citizen wished to ascertain what disposition the laws make of judgments, in favor of the State, for fines and on forfeited bonds, in criminal proceedings. Would the title of the Act in question give him any clue to the subject ? Could he reasonably expect to find the subject treated of under the head of *the payment* of costs or expenses ? If he could not, it is clear that the intention of the people, as expressed in convention by Article 115 of the Constitution of 1852, has not been carried out by the second section of the Act of 1857, and the same is unconstitutional.

We are forced to the conclusion, that the title to the Act in question does not furnish any fair index to the subject matters of the second section of the same, and that the second section of the statute must either be declared unconstitutional, or Article 115 of the Constitution held to be a dead letter, and that it is impossible to carry its provisions into effect.

Hitherto this court has not faltered in enforcing its requirements, and this case cannot be made an exception to the uniform practice of the court. *State* v. *Hackett*, 5 An. 92 ; *Duverge* v. *Salter et al.*, ibid. 94 ; 4 An. 297 ; *State* v. *Harrison, a slave*, 11 An. 722.

It is said by the counsel for the intervenor, that the Act of 1855, relied upon by the opposite counsel, is subject to the same objection as the Act of 1857. It does not so appear to us, and if it were so subject, it would leave in force the statutes of 1852, 1853, and 1854, which are equally favorable to the appellee.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be affirmed.

Spofford, J., concurring. I concur in the decree, but not in the reasons given for it.

The Act of March 19th, 1857, (p. 187,) " relative to the payment of expenses incident to the prosecution of criminals," only provides, in its second section, the means of carrying out the provisions of the first section. By the first, the State is directed to pay all the expenses attending criminal prosecutions in the different parishes of the State, (except the pay of jurors,) and by the second, the State is to receive the fines and forfeitures resulting from such prosecutions. The two sections are so interwoven, and relate so naturally to the one main object of the Act, which is to provide for " the payment of expenses incident to the prosecution of criminals," as expressed in its title, that I think it requires too subtle an analysis, to bring it into conflict with Article 115 of the Constitution.

But I concur in the conclusion of the district judge, because it seems to me that the Act of March 19th, 1857, must have a prospective operation only, in all its parts and clauses. The view of the legislature obviously was that the old policy, which required the several parishes to pay the expenses incident to criminal prosecutions, within their respective territories, and to receive, as a fund for doing so, the fines and forfeitures growing out of such prosecutions, should be changed *in toto*, so as to put the State, in lieu of the parishes, as the disburser of such expenses and the recipient of such funds. The duty to pay, and the right to receive, were intended to be correlative and to go *pari passu.* It seems to me that the only sound construction of the Act is, that the State shall pay only the expenses of such prosecutions as might be commenced after the promulgation of the Act, and receive only the fines and forfeitures accruing from such future prosecutions.

This construction frees the present case from all difficulty. The prosecution of *McKeown* was had, and the forfeiture accrued before the law in question was promulgated ; the parish of Bossier paid, or is bound to pay, the expenses incident thereto. She is entitled to the resulting forfeiture as well ; otherwise, the law would have a retrospective effect, which is ever to be avoided, if possible, and never to be presumed.