[Filed January 10, 1887.]

# STATE v. CHARLES WRIGHT AND SAMUEL HARRIS.

LICENSE TO SELL LIQUORS—CONSTITUTIONAL LAW—AMENDMENT.—The city of Astoria has power, under its charter, adopted in 1876, to license, tax, and regulate bar-rooms, drinking-shops, &c., and which provides that "no law or part thereof authorizing any tribunal or officer of Clatsop County to grant tavern or grocery licenses, shall apply to persons vending liquors within the city of Astoria." An act of the legislative assembly of November 25, 1885 (Laws Spec. Sess. 38), provides "that every person obtaining a license to sell spirituous or vinous liquors shall pay into the treasury of the county, city or town granting such license" the sums therein named; and that the levy and collection thereof shall be in conformity with the ordinances respectively of such cities or towns, and the sums so collected should inure to their exclusive benefit. *Held:*

(1) That the effect of the latter act was to amend the charter of Astoria in the respect aforesaid, and the charters of other cities which contained similar provisions; and as this subject was not expressed in its title, the act was so far in conflict with Art. 4, Sec. 21 of the state constitution, that "no act shall ever be amended by mere reference to its title, but the act revised or section amended shall be set forth and published at full length."

(2) That the act was also in conflict with Art. 4, Sec. 20, of the constitution declaring that "every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title.

SAME—LEGISLATIVE PROCEEDINGS.—The journals of the respective branches of the legislature are the official records of the proceedings of each house. Where these records show that a bill passed by one house was amended by the other in a substantial particular, and returned to the body in which it originated with a message purporting to recite the amendment made, but in fact stating it erroneously, and the latter body adopted a motion "to concur in the amendment," *it seems* such act never became a law.

SAME—POLICE POWER—BILL TO RAISE REVENUE.—An act to provide for licensing the sale of intoxicating liquors is not a bill to raise revenue, but an exercise of the police power of the state, and may originate in either house.

SAME—MUTILATION OF RECORD.—An act regularly passed will not be defeated by the partial obliteration of the enacting clause, when it does not appear to have been done by authority of the legislative assembly.

CLATSOP COUNTY.    Plaintiff appeals.    Affirmed.

*T. A. McBride*, District Attorney, and *E. C. Bronaugh*, for Appellant.

1st.    The statute in question is a mere police regulation, and not designed for the raising of revenue. Statutes licensing the sale of intoxicating liquors are almost universally held

to be an exercise of the police power of the state, notwithstanding the fact that the money derived from such source may contribute in some degree to increase the public revenue. (Cooley Const. Lim. 707, 708; *Beer Co.* v. *Mass.*, 97 U. S. 25–33 ; *Burch* v. *Mayor etc. of Savannah*, 42 Ga. 596; *Durach's App.*, 62 Pa. St. 491; *City of East St. Louis* v. *Wehrung*, 46 Ill. 392 ; *Lovingston* v. *Board of Trustees*, 99 Ill. 564 ; *Baker* v. *Panola County*, 30 Texas, 86 ; *City of East St. Louis* v. *Trustees etc.*, 102 Ill. 489 ; *City of Rochester* v. *Upman*, 19 Minn. 108.) The provision of the constitution upon the subject of amendments applies only to laws purporting to be directly amendatory. "Statutes that amend others by implication are not within this provision, and it is not essential that they even refer to the acts or sections which by implication they amend." (Cooley Const. Lim. 183 ; *Lehman* v. *McBride*, 15 Ohio St., 601–603 ; *Baum* v. *Raphael*, 57 Cal. 361; *Spencer* v. *State*, 5 Ind. 41 ; *Branham* v. *Lange*, 16 Ind. 497 ; *People* v. *Mehaney*, 13 Mich. 481 ; *Preston* v. *Bennett*, 8 W. Va. 74 ; *Swartwout* v. *Michigan etc. R. R. Co.*, 24 Mich. 389.)

*Raleigh Stott* and *C. W. Fulton*, for Respondents.

The act in question is in conflict with Art 4, Sec. 21 of the constitution of the state, and therefore void. (*State* v. *Carr*, 6 Or. 132; *Stingle* v. *Nevel*, 9 Or. 62; Cooley Const. Lim. 81–3, 141–3, and 150.) The amount of license required by the act, as well as the language used, show that its chief purpose is to raise revenue, and the bill could therefore have originated properly only in the house. (Cooley Const. Lim. 122 ; *Klippel* v. *Manning*, 9 Or. 367.) The act is further subject to the objection that it is an attempt to amend numerous city charters by one enactment. (*Talcott* v. *Board of State Harbor Com.*, 53 Cal. 199 ; *Gloversville* v. *Howell*, 70 N. Y. 287.)

STRAHAN, J.—At the January term, 1886, of the circuit court of Clatsop County, defendants were indicted for the crime of selling spirituous liquors in less quantities than one gal-

lon, without having first obtained a license therefor.   The indictment sets out a license issued to the defendants by the city of Astoria, dated January 2, 1886, which purports to authorize them to sell spirituous liquors by retail in said city for one year, for which privilege they had paid the city of Astoria $200.   The defendants demurred to this indictment for the following reasons:

First—The grand jury by which it was found had no legal authority to inquire into the crime charged, because the same is not triable within the county.

Second—That the facts stated do not constitute a crime.

Third—The court has not jurisdiction over the subject matter charged as a crime.

Fourth—That the indictment contains matter which, if true, constitutes a legal justification and excuse for the crime charged.

. The court sustained the demurrer, and the state appealed.

If the license issued to the defendants was a justification of the sale charged in the indictment, then the ruling of the court below was correct; otherwise, the same is erroneous.

By an act incorporating the city of Astoria, (Session Acts, 1876, pages 115–124, Sec. 38, Subd. 4) the city of Astoria, through and by its common council, " has the power to license, tax, regulate and restrain bar-rooms, drinking shops, theatricals and other exhibitions, shows, public amusements, etc.    *    *    *    *  *  *  *
*Provided*, that no law or part thereof authorizing any tribunal or officer of Clatsop County to grant tavern or grocery license shall apply to persons vending liquors within the city of Astoria." It is evident that the object of this *proviso* was to take from the county court of Clatsop County authority to grant liquor licenses, and the object of the other provision quoted was to confer the authority upon the city of Astoria. We therefore conclude that the license set out in the indictment was a complete justification, unless the other matters, presently to be noticed, rendered such license illegal.   But counsel for the state, in effect, contend that these provisions of the charter of the city of Astoria have been changed by the act approved November 25, 1885 (Special Session Acts, page 38).   That

act is entitled " an Act to amend section 2 of an act entitled ' an Act to regulate the sale of spirituous, malt and vinous liquors,' approved February 17, 1885." It is provided by said act as follows:

" SEC. 1. That section 2 of an act entitled : ' an Act to regulate the sale of spirituous, malt, and vinous liquors,' approved February 17, A. D. 1885, be amended so as to read as follows, to wit:

" SEC. 2. Every person obtaining a license to sell spirituous or vinous liquors shall pay into the treasury of the county, *city* or *town* granting such license the sum of three hundred dollars per annum, and in the same proportion for a less period, or two hundred dollars per annum, and in the same proportion for a less period, for a license to sell malt liquors only ; *provided,* that no license shall be granted for a less period than six months; *and be it further provided,* that no license to sell spirituous, malt or vinous liquors shall be granted *by any incorporated city or town* for a less sum than that hereinbefore specified ; and that the levy and collection thereof shall be in conformity to the ordinances respectively of the cities or towns aforesaid, and the revenues thus collected shall inure to their exclusive use and benefit.

Counsel for the state claim that this act has superseded or repealed the laws and ordinances of the city of Astoria, in so far as they fix different amounts for license than those contained in this act, and that the license set out in the indictment is illegal for that reason. This depends on the effect to be given to this act. Counsel for the defendants claim that so far as it applies to the incorporated cities and towns of the state, it is in conflict with article 4, section 21 of the constitution, which provides that no act shall ever be revised or amended by mere reference to its title, but the act revised or section amended shall be set forth and published at full length.

If valid, the effect of this act is to amend the charter of every incorporated city or town in the state. It must be conceded that the legislature has the unquestioned right to create municipal corporations, and to change or alter them at pleasure ;

but the manner in which the power may be exercised is limited and regulated by other provisions of the constitution applicable alike to all legislation whatever.    The section of the constitution above quoted is not new, but is to be found in the constitutions of many of the states, and its objects and meaning are well understood.   One of the objects to be accomplished by it was to give notice of the contents of the proposed act, and to prevent clauses being inserted of which the title gave no intimation ; so that neither the members of the legislature nor the people could be misled by the title.

The first question to be determined, therefore, is, whether this act does either revise or amend the charter of the city of Astoria.  If it does, there can be no doubt it is in conflict with this provision of the constitution, because it is not claimed that Art. 4, Sec. 21 of the constitution was complied with in its enactment.

In legislation, an amendment means an alteration in the draft of a bill proposed, or in a law already passed.   (Rapalje & Lawrence Law Dict., title amendment.)   So that if this act alters the legal effect of the charter of the city of Astoria in a particular already covered and provided for by the charter, then it is to be taken as an amendment of the charter.   This is not a case where new and additional powers are added by way of supplement, but the change or alteration of an existing power; and I think it is too plain for argument that it is an amendatory statute.

Said this court, in *City of Portland* v. *Stock,* 2 Or. 69: " Manifestly, then, section 7 enlarges the powers previously possessed by the city government, revises and amends them ; and if that section were valid the city authorities could, after the 15th of October, 1862, perform acts which would not have been lawful previous to that date.   We conclude, then, that the act of 1862 is a statute which operates by way of amendment to the charter."   And so the act was held to be in conflict with the constitution.

In this case the court was considering an act by which the powers of the corporation were sought to be enlarged : in the

case now before the court the attempted amendment is by limiting and restricting a corporate power vested in the corporation ; but in principle there can be no difference. The *City of Portland* v. *Stock, supra,* was cited and approved by this court in *Dolan* v. *Barnard,* 5 Or. 390.

If this statute is an amendatory one with respect to the charter of the city of Astoria, then it amends every municipal charter in the state, if valid. The effect would be that each charter must be read·as if the provisions in the act above quoted were transferred and copied into the proper section relating to the licensing of the sale of liquors by the corporation, for such would be the legal effect. But this construction would violate Art .4, Sec. 20 of the constitution, which provides : " Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." \* \* \* \* It will· not be contended that it would be competent for the legislature by one act to incorporate all the cities and towns in the state. If such an act would violate this provision of the constitution, because containing more than one subject, would not an act which amends all the municipal charters in the state be open to the same objection ? The same rule would have to be applied in each case.

*King* v. *Banks,* 61 Ga. 20, is a case involving this principle. There the legislature passed an act incorporating three separate and distinct corporations, or reviving by name three charters which had become obsolete ; and the court held said act contained more than one subject, and declared it unconstitutional for that reason. *Ex parte Conner,* 51 Ga. 571, involves the same principle, and was decided in the same way.

Under a like provision in the constitution of Louisiana, from which ours was probably taken, it was held by the Supreme Court of that state that the second section of an act of the legislature, approved the 10th of March, 1857, entitled " an Act relative to the payment of expenses incidental to the prosecution of criminals," which declared that the fines and forfeitures to be collected for the violation of the criminal laws of the state shall be paid into the state treasury, was unconstitutional, be-

cause it contained more than one subject. (*Parish of Bossier* v. *Steele*, 13 La. Ann. 433.)   The like ruling was also made in *Smails* v. *White*, 4 Neb. 353; *Cutlip* v. *Sheriff of Calhoun Co.*, 3 W. Va. 588; *In re Petition of Wm. Blodgett et al.*, 89 N. Y. 392; *Stewart* v. *Father Matthew Society*, 41 Mich. 67; *Burlington & M. R. R. Co.* v. *The Board of County Commissioners of Saunders Co.*, 9 Neb. 507; *State* v. *Everage*, 33 La. Ann. 120; *Ex parte Isaac Thomason*, 16 Neb. 238.

In construing a similar provision of the constitution of Louisiana, the Supreme Court of that state said: "The title of the act of 1868 is, an act to amend the first section of an act to incorporate the town of Monroe, in the parish of Ouachita, and to provide for the government of the same, approved March 8, 1866; the first section of the act to be amended relates only to the geographical limits of the town.   Under the title, therefore, to amend only the first section of the statute of 1866, it was not competent to amend other sections of the same act, to abolish the office of town constable, and transfer the duties thereof to the sheriff and his deputies. (*Wisner* v. *Mayor and City Council*, 25 La. Ann. 598.)   It seems to me manifest that if under such a title it was not competent to amend other sections of the same act, for so much the stronger reason it is not competent to amend every city and town charter in the state, under a title to amend only a general law, and where none of said charters or acts are in any manner referred to in the title. So much of the act in question, therefore, as affects or changes the charter of the city of Astoria, is in conflict with the constitution and void.

But there is another question so intimately connected with this matter, and of so much public concern, that I cannot dismiss this subject without referring to it.   We do not find it necessary to decide the question at this time, but it may become necessary to further consider it hereafter.   The *quære* is, whether or not H. B. No. 66, to which the act already referred to is amendatory, ever became a law; and whether or not it ever passed the legislative assembly.   This is a question that, in a proper case, the court must consider and decide. (*People* v. *Mahaney*, 13 Mich. 421.)

The constitution, Art. 4, Sec. 13, provides : " Each house shall keep a journal of its proceedings. The yeas and nays on any question shall, at the request of any two members, together with the names of the members demanding the same, be entered on the journal." * * * Sec. 18 provides : "Bills may originate in either house, but may be amended or rejected in the other." * * * And Sec. 19 provides : " Every bill shall be read by sections on three several days in each house ; unless, in cases of emergency, two-thirds of the house where the bill may be depending shall, by a vote of yeas and nays, deem it expedient to dispense with this rule ; but the reading of the bill by sections on its final passage shall in no case be dispensed with ; and the votes on the final passage of every bill or joint resolution shall be taken by yeas and nays."

The journals are, therefore, the official records of the proceedings of each house. The act in question was known as H. B. No. 66, and passed the house February 9, 1885—(H. J. p. 313). The bill went to the senate on the same day, when the rules were twice suspended, and the bill read a first and second time by title ; and the same was then referred to the committee on education, with permission to report at any time— (Senate Journal, p. 274.) On February 11, 1885, the committee on education reported the bill to the senate, with a recommendation that it pass ; whereupon, on motion, the rules were suspended, and the bill was ordered to be read a third time. The question being, " Shall the bill pass ? " and pending the question, Mr. Siglin moved that the bill be recommitted to the committee on education for amendment, with leave to report at any time—which motion prevailed. (Senate Journal, p. 386.) February 13, 1885, the committee on education reported as follows : " Mr. President—Your committee on education, to whom was referred house bill No. 66, with instructions to strike out section 7, have done the same accordingly, and do now report the same back with a recommendation that it do pass. Henry Hall, Chairman." By unanimous consent, house bill No. 66 was amended as follows : In line 7 of section 4 strike out the word " cost." In line 9 of section 5 to strike out all the bal-

ance of the section, commencing with the second " and " in the line; whereupon Mr. Hare moved a call of the senate. (Senate Journal, p. 418.) When the bill was next before the senate, the following proceedings were had: H. B. No. 60 being a special order for this hour, Mr. Siglin submitted the following amendment thereto, which, by unanimous consent, was adopted, to wit:

### AMENDMENT.

In section 3, line 5, strike out the words " and signatures "; also in line 7 of section 5 strike out the word " signatures," also in line 2 of section 1, after the word "state," insert the words " in less quantities than one quart." Mr. Hare moved the previous question on the passage of the bill, and the question was, " Shall the main question be now put ? " The motion prevailed.

The question being " Shall the bill pass?" the roll was called with the following result: Yeas 20, nays 6. So the bill passed. (Senate Journal, pp. 421, 422.)

The bill was returned to the house February 14, 1885, and accompanying it was the following communication:

*Mr. Speaker :*—I am directed by the president to inform you that the senate has passed H. B. No. 66, with sundry amendments, which are herewith transmitted. And the same is herewith returned.         J. W. STRANGE, Chief Clerk.

### THE AMENDMENTS.

Amendment H. B. No. 66, as follows:

Strike out section 7.

Section 4, line 7, strike out the word " cost."

Section 5, line 9, commence with the word " and " and strike out balance of the section.

In section 5, line 3, strike out the words " and signatures."

In section 5, line 9, strike out the word " signatures."

Make sections 8, 9, 10 and 11 read 7, 8, 9 and 10.

In section 1, line 2, after the word " state " insert " in quantites less than one gallon."

Mr. Wilcox moved to concur in the senate amendments to H. B. No. 66, which motion prevailed. Yeas 44, nays 3. (H. J., pp. 476–477.)

It thus appears from the senate journal that that body ordered section 1 to be amended after the word "state" in the first section, by inserting the words "in less quantities than one quart." As reported to the house and inserted in the bill the words are, "in quantities less than one gallon." This discrepancy goes to the substance of the bill, and it is difficult to see how it can be disregarded. It does not appear from the journals of the two houses that they agreed upon this bill in the present form; but, on the contrary, that they disagreed. The senate required a license to sell in quantities less than one quart; the house, in quantities less than one gallon. It may, therefore, be well questioned whether this bill ever became a law. At the argument, the court suggested this point to the learned district attorney, who appeared in behalf of the state, and he was disposed to concede that most serious doubts exist on the question. We do not think it necessary to decide the question at this time, but have deemed it proper to point out these seeming irregularities in the passage of this bill, in order that the legislative assembly might, if thought necessary, take steps at the coming session to obviate them.

Upon the argument, counsel for the respondents claimed that the amendatory act of H. B. 66 was a bill for raising revenue, and that it should, therefore, have originated in the house. (Const., Art. 4, Sec. 18.) This is not a bill to raise revenue, but an exercise of the police power of the state, for the purpose of regulating a business that is detrimental to the public morals. (*State* v. *Hudson*, 78 Mo. 302; *Braun* v. *City of Chicago*, 110 Ills. 186; *Fletcher* v. *Oliver*, 25 Ark. 289; *City of East St. Louis* v. *Wehrung*, 46 Ills. 392.)

It was also argued that said bill was without an enacting clause, and was void for that reason. We have examined the enrolled bill in the office of the secretary of state, and there appears a single pen-stroke through the words: "Be it enacted"; but this was doubtless done surreptitiously by some irre-

sponsible party, and not by the authority of the legislative assembly, and no legal effect could be given to such unauthorized act.   If the bill was without an enacting clause it could not be a law; but the mutilation of that part of the bill could not destroy or defeat the legislative intent, if it were in other respects free from constitutional objections.   The judgment of the court below will, therefore, be affirmed.