[Argued October 16, 1893; decided November 8, 1893.]

## WARREN v. CROSBY, MAYOR.

[ S. C. 34 Pac. Rep. 661.]

CONSTITUTIONAL LAW—AMENDMENT OF STATUTES BY REFERENCE TO TITLE—
REPEAL BY IMPLICATION—CONSTITUTION, ARTICLE IV. § 22.—Statutes,
not amendatory or revisory in character, but original in form and com-
plete within themselves, exhibiting on their face their purpose and scope,
are not within the constitutional prohibition against amending acts by
reference to their title ( Or. Const. article IV. § 22 ), notwithstanding
they may by implication amend or modify existing laws upon the same
subject. *State* v. *Wright,* 14 Or. 370, overruled.

IDEM—LAWS, 1893, P. 116.—The act of 1893, p. 116, which provides for the
collection of taxes, and section 9 of which transfers to county officers
the exclusive power to assess and collect taxes for school districts and
incorporated towns and cities, is not unconstitutional because it amends
city charters and school district acts without setting them out at length.
As it amends the other acts only by implication, it is not within the
constitutional requirement that amended acts must be set out as
amended.

Clatsop County: THOS. A. MCBRIDE, Judge.

Action by M. S. Warren against M. C. Crosby, mayor
of the city of Astoria, Oregon, and others, to enjoin such city
from incurring further expense in assessing and collecting
the city taxes for the year 1893. From a judgment in
favor of plaintiff, defendants appeal. Affirmed.

*J. F. Hamilton,* for Appellants.

*George Noland,* for Respondent.

MR. CHIEF JUSTICE LORD delivered the opinion of the
court:

This is a suit brought by a taxpayer of the city of
Astoria to enjoin the city from incurring any further ex-
pense in assessing and collecting a city tax for the year
1893. The question sought to be raised is the right of the
city of Astoria to assess and collect a city tax for said

year in disregard of the general law of the state. The contention is that the general act amends section 38 of the special act incorporating the city of Astoria, in violation of section 22, article IV. of the constitution, which provides that " no act shall ever be revised or amended by mere reference to its title, but the act revised or section amended shall be set forth and published at full length." The general act—passed at the last session of the legislature, Laws 1893, 116—is entitled " An act to. secure a more convenient mode of making assessments and of collecting and paying taxes," etc., and consists of nine distinct sections which, in substance, provide as follows: Section 1 provides for four additional columns to the assessment and tax rolls, to be headed " Cities," " School Districts," " Amt. City Tax," and " Amt. School District Tax," and for inserting the name of the city or school district in which each item of property is assessable. Section 2 provides for listing the cities and school districts in the several counties in alphabetical and numerical order upon a page or pages of the tax roll, with the aggregate value of all the assessable property in each city and district set opposite the name or number thereof. Section 3 provides for taxing property in cities and school districts according to its valuation by the county assessors, and for furnishing the proper officers of such cities and districts with statements of the aggregate valuation of the assessable property in their respective cities and districts. Section 4 provides for annual notice to the clerks of the several county courts of the rate per cent of the tax levy in each city and school district in the respective counties. Section 5 provides for computing the tax upon the property of each individual by the several clerks of the county courts, and extending the same so as to show the aggregate tax of each individual upon his property in the respective cities and districts. Sections 6 and 7 provide for the collection of such taxes, and the payment thereof to the respective

cities and school districts for which they were collected. Section 9 provides "That all laws providing for assessors in, or assessments of property by, any school district, incorporated town, or city and all laws in conflict herewith, be and the same are hereby repealed."

By this act the power to assess and collect taxes, conferred on the different cities of the state by their charters, and also upon the different school districts, as well as the duties connected therewith, is transferred to the county officers designated therein. Section 38 of the special act incorporating the city of Astoria provides that its common council shall have power " to assess, levy, and collect taxes for general municipal purposes, upon all property, real and personal, which is taxable by law for state and county purposes." It will be observed that the effect of the general act is to eliminate from section 38 of the special act the power conferred on the common council to assess and collect taxes for municipal purposes, and to transfer it and the duties connected therewith to the officers of the county so designated. This, it is claimed, is such a change or alteration of section 38 as, in effect, amends it without conforming to the requirements of section 22, article IV. of the constitution; and hence that such a change or alteration could not be legally made without setting forth and publishing at full length such section as changed or modified. The question to be determined, then, is whether the general act comes within the scope of the constitutional provision invoked. The language of that provision is both prohibitory and mandatory. By its terms it inhibits the revision or amendment of an act by mere reference to its title, and requires that the act revised, or section amended, shall be inserted at length. It does not purport to limit or restrict the power of the legislature in the enactment of laws; it relates only to the mode or form in which the legislative power shall be exercised. Its prohibition is against legislation effected by modes not in conformity

with its requirements. The evil it sought to remedy was the mode in which the legislative power was sometimes exercised in the enactment of revisory or amendatory laws. This evil, as is well known, was the practice of amending or revising laws by additions or other alterations, which, without the presence of the original law, were usually unintelligible. Acts were passed amending existing statutes by substituting one phrase for another, or by inserting a sentence, or by repealing a sentence, or a part of a sentence, in some portion or section thereof, which, as they stood, often conveyed no meaning, and, without examination and comparison with the original statute, failed to give notice of the changes effected. By such means, an opportunity was afforded for incautions and fraudulent legislation, and endless confusion was introduced into the law. Legislators were often deceived and the public imposed upon by such modes of legislation. To prevent these consequences, and to secure a fair and intelligent exercise of the law-making power, was the object of the constitutional provision in question. This object it accomplished by imposing a limitation, not on the power of the legislature to make laws, but upon the mode in which that power should be exercised in the enactment of amendatory or revisory laws. If the act is in itself complete and perfect, and is not amendatory or revisory in its character, it is not interdicted by this provision, although it amends by implication other legislation upon the same subject. Such an act, although it may operate to change or modify prior acts, is not within the mischief designed to be remedied by said section 22. "Statutes," says Judge COOLEY, "that amend others by implication are not within this provision, and it is not essential that they even refer to the acts or sections which by implication they amend": Cooley, Constitutional Limitations, 152. Hence an act of the legislature, not amendatory in character, but original in form and complete in itself, exhibiting on its face what

the law is to be,—its purpose and scope,—is valid, notwithstanding it may in effect change or modify some other law upon the same subject.

As the general act under consideration deprives the cities and school districts of the state of the power to assess and collect taxes, a power which had been theretofore conferred upon them by special and general laws, it is claimed that this is such a change or alteration of those laws in that particular as is amendatory, and that, unless the general law sets forth and republishes at length the part or section thereof as amended, it directly falls within the constitutional inhibition, and is void. Hence, as the effect of the act is to take from the city of Astoria the power conferred upon it by section 38 of its charter, to assess and collect taxes, it is amendatory of that section, and for like reason, unconstitutional. This construction of the constitutional provision in question is based on the assumption that any act of the legislature which, in effect, alters or changes an existing law, or part thereof, is an amendment of it, and void, unless it inserts the law at length, or such part as is changed or amended. In support of this construction we are cited to the case of *State* v. *Wright*, 14 Or. 369 (12 Pac. Rep. 708), in which STRAHAN, J., said: "In legislation, an amendment means an alteration in the draft of a bill proposed, or in a law already passed: Rapalje, Law Dict. Title, Amendment. So that if this act alters the legal effect of the charter of the city of Astoria in a particular already covered and provided for by the charter, then it is to be taken as an amendment of the charter. This is not a case where new and additional powers are added by way of supplement, but the change or alteration of an existing power; and I think it is too plain for argument that it is an amendatory statute." In that case the act under consideration provided, in substance, that "every person obtaining a license to sell spirituous or vinous liquors shall pay into the treasury of the

county, city, or town granting such license the sum of three hundred dollars per annum, and in the same proportion for a less period; or two hundred dollars per annum, and in the same proportion for a less period, for a license to sell malt liquors only; *provided,* that no license shall be granted for a less period than six months; *and be it further provided,* that no license to sell spirituous, malt, or vinous liquors shall be granted by any incorporated city or town for a less sum than that hereinbefore specified," etc. The effect of this act, if valid, was to amend the charter of every city and incorporated town in the state. As the city of Astoria had the power conferred upon it by its charter to license and tax barrooms and drinking shops through its common council, and, in pursuance thereof, had passed an ordinance fixing the sum at two hundred dollars per annum, for which licenses were granted and issued, the effect of the act was to repeal such ordinance in so far as it fixed a different amount for the license than the sum prescribed by the act, and to limit the power of the common council, under the charter, to grant licenses for sums less than those named in the act. While, therefore, the effect of the act was to alter or change to this extent an existing power, it was produced by such act repealing *pro tanto,* by implication, the section of the charter which conferred it. The act itself was complete—its meaning and scope plain and apparent; nor was there anything on its face to evince an amendatory character. It was an independent act of legislation designed to regulate the sale of liquor in the state. When an act of this character so operates as to modify or change prior acts of legislation, it does not fall with the mischief designed to be remedied by the constitution, although the effect is to alter or amend by implication some prior legislation upon the same subject. To hold otherwise, and give this constitutional provision the construction claimed, would be, in effect, to declare that the legislature is powerless to pass

any act changing or altering in any respect the statute law of this state without reënacting and republishing at length every section of all prior statutes, general and special, that might be affected by the new statute. We do not think that such construction is tenable or sustained by the adjudications. Statutes which amend or repeal others by implication are not obnoxious to the constitution. If, therefore, the general act now in question is complete in itself as an independent act of legislation, although it may operate to change or modify some prior law, it does not fall within the constitutional inhibition, and is valid. In form the act is original, and not amendatory. It does not assume to amend or revise any prior general or special act, or section thereof, but by conferring on the county officers the power to assess and collect taxes for the cities and school districts of the state, it had an amendatory effect by implication upon such prior legislation as conferred that power on such cities and school districts, and by its last section expressly repeals all laws providing for assessors in, or assessments of property in, school districts, incorporated towns, or cities.

The city of Astoria having the power conferred on it by section 38 of its charter, to assess, levy, and collect taxes for municipal purposes, the effect of the general act in conferring upon the county officers the power to assess and collect taxes, but not to levy them, for cities and school districts of the state, was to deprive the city of the right to exercise such power, and, as a consequence, the act operated to change or alter section 38 of the charter of Astoria by striking out the power to assess and collect taxes; or, in other words, it operated to amend such section by repealing, *pro tanto*, that portion of it by implication. But the act does not purport to be an amendment of any previous statute, special or general; it is an independent act of legislation, complete and perfect in itself. The power conferred, and the duties imposed, and all matters

connected therewith, are specified in the body of the act.
It shows on its face what the law is to be. Neither the
legislators nor the public could fail to discover its purpose
and meaning without reference to any prior legislation
upon the same subject. It is entitled "An act to secure a
more convenient mode of making assessments and collect-
ing and paying taxes," etc., and establishes a new policy
of the state in reference to the assessment and collection of
taxes. Such an act does not fall within the constitutional
provision or mischief intended to be remedied. The adju-
dications are numerous to the effect that an act which
does not assume to amend prior legislation, and is a com-
plete and perfect act in itself,—its purpose and scope
apparent on its face,—is not interdicted by the constitu-
tion, although it amends by implication other statutes on
the same subject. In *People* v. *Mahaney*, 13 Mich. 496,
where a similar provision of the constitution of Michigan
was under consideration, it was held that an act establish-
ing a policy of government for an incorporated city, which
did not assume in terms to revise, alter, or amend any
section of the city charter, was valid, although, by the
transfer of the duties from one officer to another, it had
an amendatory effect by implication on sections of the
city charter which were not reënacted and republished.
COOLEY, J., said: "It is next objected that the law is
invalid because in conflict with section 25 of article IV. of
the constitution, which provides that "no law shall be
revised, altered, or amended by reference to its title only;
but the act revised, and the section or sections of the act
altered or amended, shall be reënacted and published at
length." The act before us does not assume, in terms, to
revise, alter, or amend any prior act, or section of an act,
but by various transfers of duties it has an amendatory
effect by implication, and by its last section it repeals all
inconsistent acts. We are unable to see how this conflicts
with the provision referred to. If, whenever a new statute

is passed, it is necessary that all prior statutes modified by it by implication should be reënacted and published at length as modified, then a large portion of the whole code of laws of the state would require to be republished at every session, and parts of it several times over, until, from mere immensity of material, it would be impossible to tell what the law was. If, because an act establishing a police government modifies the powers and duties of sheriffs, constables, water and sewer commissioners, marshals, mayors, and justices, and imposes new duties upon the executive and the citizen, it has thereby become necessary to reënact and republish the various laws relating to them all as now modified, we shall find, before the act is completed, that it not only embraces a large portion of the general laws of the state, but also that it has become obnoxious to the other provisions referred to, because embracing a large number of objects, only one of which can be covered by its title.

This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another, in an act or section which was only referred to but not published, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent."

This construction of the Michigan constitutional provision was reaffirmed in *People* v. *Wands*, 23 Mich. 385, and in *Swartwout* v. *Mich. Air Line R. R. Co.* 24 Mich. 389. In *Everham* v. *Hulit*, 45 N. J. Law, 53, where a similar provision of the New Jersey constitution was under consideration, DEPUE, J., said: "A construction of this constitutional provision which would sustain the contention of the plaintiff would lead to the most embarrassing results. It would be equivalent to holding that the legislature can pass no act changing any part of the statute law in force in this state without reënacting at length every section in the whole body of existing statutes that might be affected by the new legislation. Since the constitutional amendments went into effect, a considerable number of acts have been passed designed to simplify and make more efficacious the mode of making and collecting assessments for local improvements in the municipalities of this state. These were subjects specially provided for in sections contained in their several acts of incorporation. General acts have also been passed providing for the assessment, collection, and lien of taxes,—subjects specially provided for in sections incorporating cities, towns, and townships, as well as in several parts of the general tax law of this state. In many instances provisions of this kind are contained in long sections in which it is usual to express and define the general powers of corporations; sometimes they are distributed in appropriate places in different sections of the acts. If this constitutional provision has made it necessary to the validity of a new statute on the subject that every prior statute on the same subject which may be altered or modified should be inserted in it at length, it would be quite impossible to legislate at all on the subjects mentioned, or on kindred subjects, for a statute which would comply with such a requirement would probably be obnoxious to that other provision of the constitution, that every law should embrace but one object and that

object should be expressed in its title." The same rule of construction has been applied in other states: *Braham* v. *Lange,* 16 Ind. 497; *Lehman* v. *McBride,* 15 Ohio St. 603; *Pollard* v. *Woods,* 40 Ala. 77; *Tuscaloosa Bridge Co.* v. *Olmstead,* 41 Ala. 9; *Shields* v. *Bennett,* 8 W. Va. 75; *Baum* v. *Raphael,* 57 Cal. 361; *Fleischner* v. *Chadwick,* 5 Or. 155; Cooley, Constitutional Limitations, 183.

In coming to the conclusion reached in this case, we have not overlooked the principle that a general law will not be considered as modifying or repealing a special or local law, except by express words or necessary implication. "Laws special and local in their application," says ALLEN, J., "are not deemed repealed by general legislation, except upon the clearest manifestation of the legislature to effect such repeal, and ordinarily an express repeal by some intelligible reference to the special act is necessary to accomplish that end": *People* v. *Quigg,* 59 N. Y. 88. "But," as was said by DIXON, J., "there is no rule of law which prohibits the repeal of a special act by a general one; nor is there any principle forbidding such repeal without the use of express words declarative of the legislative intent to repeal the entire statute": *New Brunswick* v. *Williamson,* 44 N. J. Law, 167. The question is one of intention, and the purpose of the general act to modify or repeal the special act must be clearly manifested,— the conflict must be irreconcilable,—in the absence of express words declarative of the legislative intent: *Brown* v. *City of Lowell,* 8 Metc. 172; *Brown* v. *County Commissioners,* 21 Pa. St. 42; *State* v. *Fitzporter,* 17 Mo. App. 273; *Fosdick* v. *Village of Perrysburg,* 14 Ohio St. 485–6; Sedgwick, Statutory Law, 123. In the case at bar the intent of the general act to interfere with the power conferred by section 38 of the charter is clearly manifest, and the last section is expressly declarative of that purpose.

In *State* v. *Wright,* 14 Or. 369 (12 Pac. 708), the general and special act, in the particular noted, are not only clearly

inconsistent with each other, but the act also expressly declares that "no license to sell spirituous, malt, or vinous liquors shall be granted by any incorporated city or town for a less sum than hereinbefore specified." In view of these considerations, in so far as the case of *State* v. *Wright*, is in conflict with the construction we have given to the constitutional provision in question, it must be considered as overruled, and the judgment in the case at bar must be AFFIRMED.