**ROSS v. PORTLAND.**

[70 Pac. 373.]

EVIDENCE OF ASSESSMENT OF CITY TAXES.

1. An examination of the evidence shows that the taxes levied by the City of Portland on the mortgages in question, which appear on the county tax rolls for 1891 and 1893, were in fact for the years 1890 and 1892, and were levied before the mortgages were released, and before the repeal of the mortgage tax law.

MUNICIPALITIES—APPLICATION OF STATE TAX LAWS BY REFERENCE.

2. Where a city is authorized by its charter to assess and collect taxes for city purposes upon the property within its limits taxable for state and county purposes, and to that end to procure a copy of the assessment of such property from the county roll, and submit the list so obtained to a certain committee for equalization, the effect of the assessment and levy of a tax by the city, based on such list, is the same as the effect of such proceedings by a county.

From Multnomah: ALFRED F. SEARS, JR., JOHN B. CLELAND and MELVIN C. GEORGE, Judges, in joint session.

This is a suit by J. Thorburn Ross, trustee, against the City of Portland, to enjoin the enforcement of and collection of

certain taxes, which are claimed to be clouds on the title to certain real property.  The complaint alleges, in effect, that the defendant is a municipality; that plaintiff is the owner and in possession of certain lots situate therein, which, during the years 1891, 1892, and 1893, and prior thereto, were owned by and in possession of one P. A. Marquam, plaintiff's predecessor in title; that Marquam and wife, on May 21, 1888, May 30, 1889, and June 24, 1890, executed and delivered to the German Savings & Loan Society three mortgages upon the property to secure $55,000, $50,000, and $15,000, respectively, which were duly recorded, and constituted liens thereon; that all of said mortgages were on the thirteenth day of February, 1891, discharged, and duly satisfied of record; that on the seventh day of February, 1891, Marquam and wife executed and delivered to one James Phelan a mortgage upon said property to secure the sum of $125,000, which, being duly recorded, became a lien thereon; that for the year 1891 the three mortgages given to the German Savings & Loan Society were assessed by the city auditor, and a tax levied upon them in the aggregate sum of $675, and for the year 1893 the Phelan mortgage was assessed by the same officer, and a tax levied thereon in the sum of $1,250, and that no part of said taxes has ever been paid.  It is further alleged, in general terms, that the act of the legislative assembly of 1882, approved October 26th of that year, commonly known as the "Mortgage Tax Law," was unconstitutional and void, as in contravention of the Fourteenth Amendment to the Constitution of the United States; that the defendant claims a lien upon the property by virtue of said assessments, and that such claim constitutes a cloud upon plaintiff's title; wherefore it is prayed that the defendant be enjoined from attempting to enforce such levies against plaintiff's said property.  To this complaint a general demurrer was interposed, assigning, among other reasons therefor, that the complaint does not state facts sufficient to constitute a cause of suit, and, being sustained, a decree was entered dismissing the suit, and plaintiff appeals.                    Affirmed.

For appellant there was a brief over the names of *J. Thorburn Ross, E. B. Seabrook* and *William A. Munly,* with an oral argument by *Mr. Seabrook* and *Mr. Munly.*

For respondent there was a brief over the names of *Joel M. Long* and *Ralph R. Duniway,* with an oral argument by *Mr. Lawrence A. McNary,* City Attorney.

Mr. Justice Wolverton, after stating the facts, delivered the opinion of the court.

1. The abstract of the clerk or recorder of conveyances in each county of mortgages, deeds of trust, etc., remaining unsatisfied on July 1st of each year was, under the mortgage tax law, made the basis for the assessment thereof for the current year: Hill's Ann. Laws, § 2755. As a further premise, this law was repealed on February 10, 1893, the repeal becoming effective after the approval of the Governor. Arguing from these premises, it is submitted by counsel for plaintiff that, aside from any question of a lien imposed by the mortgage tax upon the premises, the complaint states a cause of suit, because it is alleged that the German Savings & Loan Society's mortgages assessed for the year 1891 were paid and satisfied of record in February of that year, and before it became the duty of the recorder of Multnomah County to deliver the abstract to the assessor, thus showing the invalidity of the tax for that year; and that as to the Phelan mortgage the law authorizing the tax was repealed early in the year in which it is alleged to have been assessed, and therefore that there was also no substantial basis for its assessment. Under the general law the assessor was required to make up and deliver the rolls to the board of equalization for its action on or before the last Monday in August, and the county court was required at its September term to levy the tax, so that the assessment was made and levied within the year. Under the city charter of 1882, and the ordinances in force at the time the tax upon the savings and loan society's mortgages was levied, the auditor was required to make up the list or roll on or before December 1st of each year, and upon the filing thereof it became his duty

to give notice that the same would remain open for inspection until the first day of January following, prior to which time all applications for corrections of error should be filed. It. was further provided that, when the roll was fully revised and corrected, all general and special taxes levied should be extended thereon by the auditor: City Charter, § 53 (Laws 1882, p. 157) ; Ordinance No. 2923 (Laws of City of Portland 1886, p. 90). From these provisions it will appear that, while both the assessment and levy for county purposes were made in the same year, the levy for the municipality was made the year following, and the tax was designated upon the roll as that of the latter year. So that in denominating the tax on the savings and loan society's mortgages as of 1891 the pleader unquestionably refers to the assessment of 1890, which culminated in a completed levy in 1891, in which latter year the tax was collectible. While like conditions do not obtain as it relates to the Phelan mortgage, the assessment and levy for municipal purposes having been made in the same year, yet the former practice evidently continued, and the tax was designated as of the year in which it was collectible, so that the pleader in this instance has denominated the tax as that of 1893. The reference is without doubt to the assessment and levy of 1892, otherwise the pleader is without a case upon the facts. In this view and understanding of the situation, and the taxes involved in the controversy, the contention of counsel is not available. This brings us to the real merits of the controversy, which is resolved into one purely of law.

2. At this juncture plaintiff insists that the assessments made by the city did not give a lien upon the real estate described in the complaint, and therefore that the tax could not be enforced, except as against the mortgagees personally. The mortgage tax law provided, among other things, that a mortgage, deed of trust, etc., should be assessed and taxed to the owner of such security and debt in the county, city, or district in which the land or real property affected by such security was situated, and that the tax so assessed and levied should be a lien thereon: Hill's Ann. Laws, § 2755. This statute has

received judicial construction, and it is now settled that an assessment for state and county purposes in pursuance of its provisions impressed a lien upon the mortgagee's interest in the land obtained by virtue of the mortgage, and that such interest was liable for the tax, and may be sold for the enforcement thereof, as real property is sold for a like purpose. Upon principles of public justice the law will not permit a merger of the mortgagee's interest with the fee or legal estate through payment and cancellation of the mortgage, unless the tax has been fully satisfied. The assessment and levy in the manner designated impresses the lien, which continues as it pertains to the interest of the mortgagee in the premises until the tax is discharged; and it is this interest, carved out of the fee or legal estate, which is the subject of sale, and the assessment and levy affected the mortgagee's interest in the fee in proportion as the magnitude of the mortgage involved it: *Dekum* v. *Multnomah County,* 38 Or. 253 (63 Pac. 496) ; *Alliance Trust Co.* v. *Multnomah County,* 38 Or. 433 (63 Pac. 498) ; *Savings & Loan Soc.* v. *Multnomah County,* 169 U. S. 421 (18 Sup. Ct. 392). The mode of assessment, except to designate what property and to whom it should be assessed, was not prescribed by the mortgage tax law. This was left to the general law covering the subject-matter of assessment and taxation; and the lien was acquired by means of the procedure available in such assessments for county purposes. Turning now to the charter of the City of Portland, by authority of which both assessments ·complained of were made, we find that the common council was authorized and empowered to assess, levy, and collect taxes for general municipal purposes upon property, both real and personal, taxable by law for state and county purposes: Laws 1882, p. 150 (Portland City Charter), as amended by Laws 1885, p. 408, and Laws 1891, p. 802. Under this grant of authority it is conceded by plaintiff that the city authorities were given power to assess mortgages, deeds of trust, etc., and therefore that the mortgages designated in the complaint were properly assessed to the owners thereof; but the effect of the assessment as constituting a lien upon the property of plaintiff is

challenged, and this upon the ground that the city was nowhere, by the provisions of its charter, authorized to impress such a lien, and that it could not have been so impressed without such requisite authority. Pursuing the charter of 1882 further, we find that it was made the duty of the auditor (and in this respect it was not changed by the amendment of 1885) to make out a list of taxable property within the limits of the city, which list was to be taken from the assessment roll for Multnomah County; and when the roll was thus made up he was required to certify and deliver it to the committee on ways and means of the common council for equalization, as thereafter provided for: Laws 1882, p. 157. The manner and mode of assessment prescribed was, therefore, in effect, to adopt the assessment made by the assessor of Multnomah County under the general law, and logically was the same thing as if it were made directly under the requirements of such general law.

Portland City Charter 1891, § 55 (Laws 1891, p. 811), provided that the city assessor should, immediately after his election and qualification, procure from the auditor a blank assessment roll, and proceed, as provided by the general laws of Oregon, for the assessment, valuation, and listing of property for state and county purposes, and assess all taxable property in the city, both real and personal, but that no deduction on account of indebtedness should be made, except indebtedness within the City of Portland. Thus this charter not only expressly required that all property taxable by law for state and county purposes should be assessed, but that the mode and manner of assessment, valuation, and listing of property provided by the general laws of Oregon for state and county purposes should be adopted and pursued. Now, finding like property assessable by a like mode and manner in both jurisdictions, why is not the result the same? In the one jurisdiction the assessment and taxation of mortgages by the method prescribed impresses a lien upon the mortgagee's interest in the realty mortgaged. Why should not the same result follow in the other jurisdiction, when the same method is required to be pursued? In other words, having adopted the same scheme of assessment

and taxation, why do not the same results follow by an observance of its terms and conditions in practice? Logically, there is but one answer. The property of the lien necessarily attaches when the mode and manner pointed out is observed, whether it is under the one jurisdiction or the other. By the language of the charter, making appropriate reference to the general laws for the purpose of assessment and taxation, there is adopted and read into it such general laws, and the effect of the assessment in either jurisdiction is the same in impressing the lien for taxes levied.

Nor are we without authority for this position. In *Welch* v. *City of Astoria,* 26 Or. 89 (37 Pac. 66), where the city charter authorized the assessment of property to be made in the manner prescribed by law for assessing property for state and county purposes, it was held that the mortgages were subject to taxation for municipal purposes. The matter of the lien, however, was not then called in question. But authority conferred by the charter of a municipality to assess taxes upon the freeholders and inhabitants thereof ''according to law'' means according to the provisions and principles of the general law in force at the time the assessment was made: 2 Dillon, Mun. Corp. (4 ed.) § 772. The doctrine of this text has the authority of *Ontario Bank* v. *Bunnell,* 10 Wend. 186, and *City of Buffalo* v. *Le Couteulx,* 15 N. Y. 451. In the case of *American Transp. Co.* v. *City of Buffalo,* reported as a footnote to *Mayor of Troy* v. *Mutual Bank,* 20 N. Y. 387, Chief Justice Denio says: ''Where cities and incorporated villages are authorized by their charters or by law to lay taxes for municipal objects, the Revised Statutes have no primary application to the case; but, inasmuch as convenience and propriety require that the principles of taxation should be uniform, the general provisions of law contained in the Revised Statutes are usually applied by words of reference contained in the city or village charters. The last assessment roll, under the general law, is generally directed to be copied, or in some other way the rules which govern in ordinary cases are required to be observed in the assessmnt and collection of the city or village tax. Where the general

law is made applicable in this way, any change in the law would produce a corresponding change in the method of taxation by municipal corporations, the reference being to the law as it shall exist for the time being.'' To the same purpose, see *Hayden* v. *Foster,* 13 Pick. 492. Thus we conclude that the city charters under consideration authorized the assessment and taxation of like property in the mode and manner prescribed by the general law, and whatever mode and manner was thereby prescribed at the time of the assessment and levy became *pro hac vice* the one to be observed and followed by the mnuicipality, and the result was to give as full effect to the general law in conferring the lien as if the assessment was made for state and county purposes. The law and the effect were logically the same, whether administered by the state or the municipality, and the lien as a property or characteristic of the assessment and taxation of mortgages followed in either event.

These considerations render inapplicable plaintiff's contention that the mortgage tax law, read in the light of the decision of this court in *Warren* v. *Crosby,* 24 Or. 558 (34 Pac. 661), is unconstitutional and void as impairing the obligation of contracts. The law alluded to, as we have seen, was not directly or by implication amendatory of the charters under consideration. The language and terms of the charters themselves made the mode and manner prescribed by the general law for assessment and taxation, whatever it may have been at the time, that which should be observed by the municipal authorities, and the doctrine of amendment by implication or interpretation is without relevancy to the controversy. The decree of the trial court will, therefore, be affirmed.        AFFIRMED.

<div align="center">

Decided 20 October ; rehearing denied 8 December, 1902.