CALIFORNIA-OREGON POWER CO. v. CITY OF GRANTS PASS et al.

(District Court, D. Oregon. March 3, 1913.)

No. 5,914.

ELECTRICITY (§ 11*)—POWER AND LIGHTS—PUBLIC SERVICE CORPORATION—
RATES—PUBLIC UTILITIES ACT—EFFECT.

Public Utility Act Or. 1911 (Laws 1911, p. 483), vesting in the railroad commission jurisdiction to supervise and regulate every public utility, including corporations furnishing heat, light, water, or power, requiring such companies to file rate schedules and conferring on the commission jurisdiction to pass on the reasonableness thereof, and on applications for changes therein, superseded municipal charter provisions authorizing cities to fix rates to be charged by such corporations, so far as the same were in conflict or inconsistent with the powers of the railroad commission, and hence an electric light company having filed its rate schedule as prescribed by such act, a subsequent city ordinance prescribing lower rates was invalid and unenforceable.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 11.*]

In Equity. Suit by the California-Oregon Power Company against the City of Grants Pass and others. Decree for complainant.

A. C. Hough, of Grants Pass, Or., for plaintiff.
Robert G. Smith and Geo. W. Colvig, both of Grants Pass, Or., for defendants.

BEAN, District Judge. This is an application for a preliminary injunction restraining the defendant city from enforcing an ordinance fixing rates to be charged by the plaintiff for supplying the inhabitants of the city with electricity for light and power purposes.

The plaintiff owns and operates in the defendant city an electric light and power system constructed and maintained under an ordinance dated January 5, 1905, granting to its predecessor in interest, the Condor Water & Power Company "and its successors and assigns forever," the right to occupy the streets, alleys, and highways of the city for the purposes stated. The Condor Water & Power Company assigned its franchise and plant to the Rogue River Electric Company, and on March 29, 1910, the latter company and the mayor and auditor, assuming to act on behalf of the city, entered into a contract fixing the terms and rates upon which the company would supply the city with light for a term of 10 years. The plant and franchise and all rights of the Rogue River Electric Company were subsequently assigned to the plaintiff. On April 4, 1912, the city passed an ordinance declaring the rates which could lawfully be charged for furnishing light and power to the city, and prohibiting the city officers from auditing or allowing any other or further sum than in such ordinance named, and thereafter refused to pay the plaintiff the amounts specified in the contract of March 29, 1910.

On January 15, 1913, the plaintiff filed with the Railroad Commission, pursuant to an order of such commission, a schedule of its rates, tolls, and charges as required by section 29 of the Public Utility Act

of 1911. Laws 1911, c. 279. On the next day the defendant city passed an ordinance with an emergency clause making it unlawful for any person, firm, or corporation supplying the inhabitants of the city with electricity for light or power purposes to charge or receive from private consumers any rates in excess of those prescribed in the ordinance, which were less than as stated in the schedule filed with the commission.

The only question necessary to consider on this application is the power of the city to pass and enforce the ordinance last above referred to. Other questions were discussed at the argument, but are deemed immaterial to the present controversy. The city has not attempted to revoke or annul the franchise under which the plaintiff is maintaining and operating its plant, but only to fix the rates to be charged by it, and hence the validity of such franchise is not involved in this suit, and the adoption of the ordinance of 1912 is but an effort to repudiate the contract of March 29, 1910. The plaintiff has a full, complete, and adequate remedy in an action at law to recover on the contract, in which the rights of the parties can be determined. Nor is it important whether the charter gives the city the power to fix the rates to be charged private individuals or consumers by the plaintiff. The ordinance sought to be enjoined was enacted after the plaintiff had filed its schedule of rates with the Public Service Commission as required by law, and thereafter it became and was unlawful for it to charge any greater or less compensation than as specified therein, until the rates should be changed as provided in the Public Utility Act. Section 31. That act defines the term "public utility" to embrace all corporations, companies, individuals, etc., that now or hereafter may own, operate, or control any plant or equipment for the conveying of telegraph or telephone messages, or the transportation of passengers by street railways as common carriers, or for the production, transmission, delivery, or furnishing of heat, light, power, or power (section 1); vests in the Railroad Commission power and jurisdiction to supervise and regulate every public utility thus defined, and to do all things necessary and convenient in the exercise of such power and jurisdiction (section 6); requires every public utility to file with the commission within a time to be fixed by it schedules which shall be open to inspection, showing the rates, toll, and charges in force at the time for any services performed, and all rules and regulations that in any manner affect such rates (sections 25, 26, and 77); requires a copy of so much of such schedule as the commission shall deem necessary for the use of the public to be printed and kept on file in the station or office of the company where payments are made by customers or users, and open to the public (section 27); provides that no change shall thereafter be made in the schedule of rates except upon notice to the commission (section 29); requires copies of all new schedules to be filed in every station and office of the company where payments are to be made by the public 10 days prior to the time the same are to take effect, unless the commission shall provide a less time (section 30); provides that the rates, tolls, and charges named in such schedules shall be the lawful rate until changed as provided in

the Public Utility Act, and makes it unlawful for a public utility to charge or receive a greater or less compensation for any service than as specified therein (section 31); whenever the commission shall believe or when a complaint is made to it that the rates charged by a public utility are unreasonable or unjust or discriminatory, or that its services and regulations are insufficient, etc., the commission, after notice to the utility, is authorized and empowered to hear and determine such matters (sections 41, 42); if upon such hearing any rates, tolls, regulations, or practices are found to be unreasonable, unjust, insufficient, or unjustly discriminatory, etc., the commission is given power to fix and order substituted therefor such rates and other regulations as shall be just and reasonable (sections 43, 45, 46, 51, and 52); all rates, tolls, and charges fixed by the commission shall be prima facie lawful until found otherwise in a suit brought for that purpose as provided in sections 54, 55, 56, and 57 (section 53); and a penalty is provided for the failure of the utility company to observe them (section 63); municipalities are given certain powers over public utilities within their limits, subject to revision by the commission, but not to fix rates (section 61).

It thus appears that the purpose of the Legislature in adopting the law and the people in approving it was to provide a uniform system throughout the state for the control and regulation of public matters, and fixing the rates to be charged by them, and to create a tribunal for that purpose. By that act the power to fix the rates to be charged by public service corporations conferred on the different cities of the state by their charters is transferred to the Railroad Commission, and such charter provisions are therefore amended or superseded as far as they are in conflict or inconsistent with the powers so conferred. Warren v. Crosby, 24 Or. 558, 34 Pac. 661; Hoffman v. Branch, 24 Or. 588, 38 Pac. 4; Northern Counties Trust v. Sears, 30 Or. 388, 41 Pac. 931, 35 L. R. A. 188. When a public utility has filed its schedule of rates, as required by the law, such schedule fixes the only rates which it may lawfully charge or collect until they are changed in the manner provided by the law. If it does charge or receive any greater or less compensation, it is liable under the public utility law to a forfeiture for each offense, and its agent or officer offending to a fine.

It follows, therefore, that, after such schedule has been filed, the power of a municipal corporation to change or modify the rates therein stated no longer exists, because it is inconsistent with the provisions of the Utility Act and the obligations and liabilities of public service corporations thereunder. If the rates stated in the schedule filed by the plaintiff company are unreasonable or unjust, the city has a remedy by the proper proceedings before the commission, but it cannot prescribe other rates by ordinance and punish the plaintiff or its officers for a failure to observe them.

Preliminary injunction will issue as prayed for.