Submitted on briefs, decided December 27, 1910.   Rehearing denied March 14, 1911.

## MARTIN *v.* O. R. & N. CO.

[113 Pac. 16.]

COMMERCE—INTERSTATE COMMERCE—REGULATION BY STATE — POLICE POWER.

1. The states may, under their police power, make reasonable rules regarding the methods of carrying on interstate business, and such rules are inoperative only when conflicting with regulations of Congress on the same subject, and can be supported only when consistent with the general requirement that interstate commerce shall be free and unobstructed, and when not amounting to a regulation of such commerce.

CONSTITUTIONAL LAW—SUSPENSION OF LAWS—"AUTHORITY."

2. Section 22, Article I, Constitution of Oregon, provides that the operation of the laws shall never be suspended, except by authority of the legislative assembly. *Held,* that the word "authority," while meaning power to act, whether original or delegated, is usually used to express a derivative power, and the clause permits the operation of laws to be suspended by an officer or tribunal of the State; and hence Act Feb. 18, 1907 (Laws 1907, p. 77) § 26, requiring railroads to furnish cars on demand by shippers, and authorizing the railroad commission to suspend the operation of the act, is constitutional.

COMMERCE—REGULATION—RAILROADS — CONFLICT BETWEEN STATE AND FEDERAL STATUTES.

3. Since Act February 18, 1907 (Laws 1907, p. 77) § 26, requiring railroads to furnish cars on demand by shippers, covers a field not occupied by the federal act of Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), known as the interstate commerce law, as amended by Act June 29, 1906, c. 3591 (34 Stat. 584: U. S. Comp. St. Supp. 1909, p. 1149), in that it regulates the manner of making the request, the excuses that may be made for a failure to deliver cars, and adds an additional penalty by way of demurrage for failure to comply with its terms, it is not superseded by nor in conflict with the federal statute.

CONSTITUTIONAL LAW—EQUAL PROTECTION OF LAW—DUE PROCESS OF LAW.

4. Act Feb. 18, 1907 (Laws 1907, p. 77) § 26, requiring railroads to furnish cars to shippers on demand, and by Section 51 making a railroad liable in treble damages, with attorney's fees, to one injured by a violation of the act, is not void, as denying to railroads the equal protection of the law and depriving them of property without due process of law.

From Umatilla:   HENRY J. BEAN, Judge.

Statement by MR. JUSTICE SLATER.

This action was begun by F. V. Martin and Ralph Riggs as partners under the firm name of Riggs & Co. and Riggs & Martin.   Prior to the trial in the lower courts Riggs died, and his coplaintiff, Martin, as the sole surviving partner, was substituted.   The action was to recover damages for defendant's failure to furnish the firm of Riggs & Martin a number of refrigerator cars, demanded by them for shipping apples from Milton station, on defendant's line of road in Umatilla County, to destinations outside the state.   The complaint sets forth, in substance:   (1) The partnership relation existing between the plaintiffs, who were engaged in buying and selling, packing, and shipping grain and perishable fruits in this State and in the State of Idaho; (2) the corporate existence of defendant, and that its business is that of a common carrier, engaged in the transportation of freight and passengers for hire, having a station with a public switch and side track at Milton in this State; (3) that during 1907 they bought a large amount of apples in the vicinity of Milton, for the purpose of selling and ship-

ping the same from Milton station; that they had the same stored in their packing and ware house, located upon a side track of defendant's railroad at Milton, where cars could be loaded by them and received for shipment by the railroad company; (4) that at several times in October and November of 1907, in compliance with Section 26 of the act of the legislature of this State, approved February 18, 1907 (Laws 1907, pp. 67, 77), they placed written orders with defendant's station agent at Milton for a number of refrigerator cars in which to transport their apples via the Oregon Short Line and Union Pacific Railroads to various eastern and southern points without the State; (5) that they had contracted to sell to one R. O. Applegate of Kansas City, Mo., at prices stated in the complaint, f. o. b. at Milton, all the apples purchased by them at or in the vicinity of that station; that prior to October 21st defendant delivered to plaintiff twelve of such cars, which they caused to be loaded with apples and shipped; that on October 21st, plaintiffs ordered twelve cars, on the 31st one car, on November 8th, four cars, and at another time in that month four cars; that defendant accepted and received plaintiff's applications for cars, which it promised to supply, but failed so to do. Various items of damages are alleged, amounting to $6,316.50, including therein $2.00 per day for each car in excess of the time allowed defendant to furnish cars by the said act. This item, amounting to $464, besides $1,000 as attorney's fees, was claimed. Defendant demurred to the complaint.

The main point urged is that it appears in the complaint that the transportation facilities mentioned therein were requested for and were to be used in carrying on interstate commerce; that the action is predicated on Section 26 of the railroad commission law, which, it is asserted, is not applicable to such transactions, and if

so applied and made to operate, constitutes a regulation of, and an unlawful and unwarranted interference with, interstate commerce, and is violative of Clause 3, Section 8, Article 1, of the Constitution of the United States. The demurrer was overruled. Defendant answered, putting at issue the material averments of the complaint and setting up two affirmative defenses. By the first, it is averred in substance that defendant's railroad lines extend through the states of Washington, Idaho, and Oregon, its main line connecting with the Oregon Short Line at Huntington, Oregon; that early in the year 1907, it carefully estimated the amount of apples that would probably be offered for shipment upon its lines during that season, and, acting upon such estimate, made adequate provision for the cars necessary for handling all shipments of apples that could reasonably be anticipated; that in the months of October and November, 1907, there was a sudden, unusual, and unanticipated congestion of freight traffic upon its lines, occasioned by a heavy yield of fruit throughout the territory traversed by defendant's lines, and a correspondingly extraordinary and unusual demand for apples in the eastern and middle western states, and that an unusual, unprecedented, and extraordinary quantity of apples was assembled and offered for shipment at various stations along defendant's lines of railroad in said states, and particularly at Milton; that such quantities of apples were collected at such station and offered for shipment at practically one and the same time, and within a period of a few weeks; that large numbers of refrigerator cars were demanded by shippers, including plaintiff, for immediate shipment of such fruit, and as a result an unusual, extraordinary, and unprecedented demand was made upon defendant, far in excess of its available supply, and far in excess of the number and capacity its agents and officers could reasonably have anticipated; and that, although defendant made the

utmost effort to supply the necessary cars for transporting the fruit offered for shipment, it was not equal to the task. The second defense avers that the transactions stated in the complaint relate to interstate commerce, and that Section 26 of the railroad commission law of this State is void, as in contravention of Clause 3, Section 8, Article I, of the Constitution of the United States.

A demurrer to the second defense was sustained, and a reply to the first put the averments thereof at issue. Upon the trial plaintiff secured a verdict and judgment for $2,758.25 damages and costs, and $500 attorney's fees. Defendant appeals.          AFFIRMED.

Submitted on briefs under the proviso of Rule 16 of the Supreme Court, 50 Or. 580 (91 Pac. viii).

For appellant there was a brief over the names of *Mr. W. W. Cotton, Messrs. Carter & Smythe* and *Mr. Arthur C. Spencer.*

For respondent there was a brief over the names of *Mr. Charles M. Kahn* and *Messrs. Lowell & Winter.*

MR. JUSTICE SLATER delivered the opinion of the court.

1. Plaintiff's right to recover in this action is based solely upon Section 26 of the railroad commission law of this State, cited in the statement of facts. That section, in so far as is material to the pending action, reads as follows:

"In furnishing cars no discrimination shall be made in favor of any person or place, or any commodity except livestock and perishable property.

"When the owner, manager, or shipper of freight of any kind shall make written application to the railroad to supply cars to be loaded in carload lots with freight of which said railroad is a common carrier, it shall be the duty of such railroad to supply cars so applied for within the time herein prescribed. If the application be for five cars or less, the number of cars applied for shall be furnished to the applicant within five days; if the

application be for more than five cars and not to exceed ten cars, the number of cars applied for shall be furnished to the applicant within ten days; if the application be for more than ten cars and less than thirty cars, the number of cars applied for shall be furnished to the applicant within fifteen days; if the application be for thirty or more cars, the number of cars applied for shall be furnished to the applicant within twenty days. Said cars shall be suitable for the purpose for which they are ordered, and shall be furnished at a convenient place for loading, at the point where required by the owner, manager or shipper making application therefor.

"Any such application must be made to the railroad upon whose line of railroad the shipment originates. Every such application shall state the number of cars wanted, the time when and place where desired, the kind of freight to be shipped and the final destination thereof. The place where said cars are desired to be loaded for shipment shall be at some station, switch or siding on the line of the railroad to which application is made. The application for cars may be made to any officer or general agent of the railroad required to furnish the same, or to an agent of the railroad at the point nearest the station, switch or siding where said cars are to be furnished. * *

"When a car or cars are applied for under the provisions of this act, and are not furnished within the time as herein required, the railroad so failing to furnish such car or cars shall be liable and held to be immediately indebted to the person making application therefor in the sum of two dollars per day or fraction of a day per car applied for and not furnished within the limit of time and as herein prescribed, until such car or cars are furnished. And to be indebted to the person making such application and not receiving the car or cars therein applied for, within the time and as herein required, in the amount of the actual damages any such applicant may sustain, except as in this section of this act stated. * *

"No charge for failure of any railroad to furnish a car or cars as herein required shall be made or enforced, or damages therefor claimed, when such failure is caused by public calamity, strikes, washouts, acts of God, the public enemy, mobs, riots, wrecks, fires, or accidents; but

the lack of sufficient motive power, cars, equipment, other appliances, terminal facilities, roadbed, facilities for maintenance, repair or transportation, or any thereof, shall not be held to excuse the failure to furnish cars as herein required, or to exonerate any railroad from the payment of the damages and penalties herein prescribed, except during the times when the railroad commission of Oregon shall by order suspend the operation of those portions of this section of this act, requiring the furnish- of cars as herein, stated, and then only during the time of such suspension." Laws 1907, pp. 77, 78, 79.

The railroad commission, upon good cause shown and after notice to interested parties and a hearing, is vested with power to suspend for a continuous period not to exceed thirty days the operation of the provisions of this section, in so far as it makes railroads liable for penalties or damages, and such order of suspension may take effect retroactively.

The first and principal contention advanced by defendant's counsel is that the apples, when assembled for shipment at Milton, and tendered by the shippers to defendant for shipment, became articles of interstate commerce, and as such were subject to the provisions of the federal interstate commerce law, and the amendments thereof; that the cars ordered for such freight were instrumentalities with which to accomplish interstate transportation, and as such could be affected by no regulation tending to direct their use or operation, except such regulation emanated from Congress; that if the statute of this State is construed to apply to such transactions, it is an unlawful attempt to regulate interstate commerce; is in contravention of the federal Constitution, and, to that extent, is void.

Without deciding, but conceding for the purpose of this case, that the contemplated transactions heretofore detailed constitute interstate commerce, that alone will not render void the provisions of the act above quoted,

if applied to them as we think it should be. Notwith-
standing the exclusive nature of the power to regulate
interstate commerce vested in the federal government,
it has repeatedly been held by the Supreme Court of the
United States that the respective states may, in the exer-
cise of their police power, make reasonable rules with
regard to the methods of carrying on interstate business.
But such rules are inoperative only when in conflict with
regulations upon the same subject enacted by Congress,
and can be supported only when consistent with the gen-
eral requirement that interstate commerce shall be free
and unobstructed, and not amounting to a regulation of
such commerce. Such is the substance of the language
of Mr. Justice BROWN in *Houston & Texas Cent. R. Co.
v. Mayes*, 201 U. S. 321, 328 (26 Sup. Ct. 491: 50 L. Ed.
772). That case was like the present one, in that the
contemplated shipment originated in Texas and the des-
tination was in Oklahoma, and it involved the validity of
a similar statute of the state of Texas, requiring cars
to be furnished upon the demand of the shipper. The
statute was held void, not because the state could not
under its police power prescribe reasonable rules and
regulations as to furnishing cars by a railroad company,
when the shipment contemplated would constitute inter-
state commerce, if carried out, but because there was
an absolute requirement by that statute that a railroad
should furnish a certain number of cars at a specified
day, regardless of every other consideration, except
strikes and other public calamities. It was held that the
act transcended the police power of the state and
amounted to a burden upon interstate commerce, but it
was admitted that the statute was not far from the line
of proper police regulation. The features of the Texas
statute, rendering it unreasonable, as pointed out by the
court, were that no exception was made in cases of a
sudden congestion of traffic, an actual inability to furnish

cars by reason of their temporary and unavoidable detention in other states, or in other places in the same state; that there was no allowance for interference of traffic, occasioned by wrecks or other accidents upon the same or other roads, involving a detention thereof, the breaking of bridges, accidental fires, washouts, or other unavoidable consequences of heavy weather. Allowance for all these contingencies is made in our statute, unless it is in the one particular of a sudden congestion of traffic, the absence of which in the Texas statute caused it to be declared arbitrary and burdensome to interstate commerce. The lower court, however, construed the word "accident," used in the statute, to be sufficiently broad to cover the contingency of traffic congestion, and defendant had the benefit of his defense on that ground, and is therefore not in a position as to that to complain. Whether the court was justified in so construing the act is not now before us, but we may say that if the word "accident" is not sufficiently comprehensive in meaning to include "sudden congestion of traffic," then that contingency is provided for in the suspension clause of the statute. This clause, however, has been assailed by defendant because, it asserts, the statute leaves to the commission to judicially determine when and under what circumstances a suspension of the law and the operation thereof may be justified, and grants the power to suspend the law. It is therefore said to be unconstitutional and void, but there is in the constitution of this State, as we interpret it, an express warrant for such delegation of power.

2. Section 22 of Article I of the constitution provides that "the operation of the laws shall never be suspended, except by the authority of the legislative assembly." "Authority" means power to act, whether original or delegated (Century dictionary), but the term is usually used to express a derivative power. The clause of the constitution under consideration was intended mani-

festly as a restrictive or prohibitive clause. If it had been intended to restrict the power to suspend the operation of laws to the enactment of the legislative assembly itself, more direct terms would doubtless have been used, such as, "the operation of the laws shall never be suspended except by the legislative assembly." By the insertion of the words "authority of" we think the intention was to make the restriction less confined, and to permit the operation of laws to be suspended by an officer or tribunal of this State, when so authorized by an act of the legislative assembly. When thus interpreted, the authority conferred upon the railroad commission by the legislative act of 1907 derives its validity from the fundamental law, and cannot be questioned. The law thus construed affords a railroad corporation ample protection under all circumstances and contingencies, and in our opinion is a reasonable exercise by the State of its police power.

3. In defendant's brief it is pointed out that Congress has legislated upon the same subject, and therefore it is argued that the state statute is superseded. This does not follow, unless the provisions of the two laws so conflict that they cannot stand together. It was said in *Sinnot* v. *Davenport,* 22 How. 227, 243 (16 L. Ed. 243), that, "in the application of this principle of supremacy of an act of Congress in a case where the state law is but the exercise of a reserved power, the repugnance or conflict should be direct and positive, so that the two acts could not be reconciled or consistently stand together." And in *Reid* v. *Colorado,* 187 U. S. 137, 148 (23 Sup. Ct. 92, 96: 47 L. Ed. 108), that court again said:

"It should never be held that Congress intends to supercede, or by its legislation suspend, the exercise of the police powers of the states, even when it may do so, unless its purpose to effect that result is clearly manifested."

The same principle was announced in *Houston & Texas Cent. R. Co. v. Mayes*, 201 U. S. 321 (26 Sup. Ct. 491: 50 L. Ed. 772). By the congressional act of June 29, 1906, c. 3591, 34 Stat. 584 (U. S. Comp. St. Supp. 1909, p. 1149), amendmatory of and supplemental to the act of Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), known as the interstate commerce law, the term "transportation" therein was declared to include cars, and it was provided that, "it shall be the duty of every carrier subject to the provisions of this act to provide and furnish such transportation upon reasonable request therefor," etc. By section 8 of the original act, the carrier omitting to do any act or thing required to be done is liable to the person injured thereby for the full amount of damages sustained, together with a reasonable attorney's fees, to be fixed by the court in case of recovery. We see no conflict between that legislation and the provisions of the state law, nor do we see any intent to exclude or supersede the state statute in regulating the furnishing of cars. Indeed, it can hardly be said that the federal act attempts to regulate that matter. It declares the primal duty to furnish cars upon reasonable request therefor, and stops with that. The penalty for a dereliction of that duty is damages suffered and reasonable attorney's fees. So far the two acts, federal and state, are identical, but the state law goes further. It regulates the manner of making the request, the time within which cars shall be furnished, the excuses that may be made for a failure to deliver cars, and adds an additional penalty by way of demurrage for a failure to comply with the terms of the statute. This statute, therefore, covers a field not occupied by the federal statute, and the principles announced in *Reid* v. *Colorado*, 187 U. S. 137, 148 (23 Sup. Ct. 92, 96: 47 L. Ed. 108), are applicable to the facts of this case.

4. It is further contended that there is no authority of law to support the allowance to plaintiff of attorney's fees in an action based upon Section 26 of the act of 1907. If there is any authorization in the law for attorney's fees, it is only by the terms of Section 51 of the same act. This section is a general penal clause, making a railroad liable in treble damages, with attorney's fees, to any person injured by its violation of this act; but by a proviso the damages awarded an aggrieved party, provided for in Section 26 of the act, by reason of the cars not being furnished when applied for, shall be in lieu of the treble damages awarded by Section 51. The two sections, therefore, by the express terms of the law, are made to co-ordinate, so that the remedy of damages provided by the former section is substituted for those of the same character, but of different degree, named in the latter section. It follows, we think, that the allowance of attorney's fees, not being expressly excluded by the terms of the act, when the action is brought under Section 26, plaintiff is entitled to an allowance, if the act is not amenable to defendant's further objections. Is Section 51, in so far as it allows attorney's fees, void for the reason that it denies to the railroad company the equal protection of the law, and deprives it of its property without due process of law? Defendant asserts that it is, because it singles out the railroad company from all citizens and other corporations of the state, and requires it to pay attorney's fees to parties successfully suing it, while it gives to such company no corresponding right.

Defendant relies upon the case of *Gulf, Colorado & S. F. R. Co.* v. *Ellis*, 165 U. S. 150, 158 (17 Sup. Ct. 255: 41 L. Ed. 666). The single question in that case was the constitutionality of a statute of Texas, allowing any attorney's fee not exceeding $10 to a claimant, who demanded of a railroad company damages not exceeding $50, for stock killed or injured by trains, when the

claim prior to the action had been presented and not paid within thirty days by the company causing the damage. An exhaustive discussion of the whole question is presented in an opinion by Mr. Justice BREWER. While the majority opinion holds that the particular statute in the respect named is void, still it is not questioned therein that railroad corporations may be for some purposes classified by themselves. This is because "the business in which they are engaged is of a peculiarly dangerous nature, and the legislature, in the exercise of its police powers, may justly require many things to be done by them in order to secure life and property. Fencing of railroad tracks, use of safety couplers, and a multitude of other things easily suggest themselves. And any classifications for the imposition of such special duties—duties arising out of the peculiar business in which they are engaged—is a just classification, and one not within the prohibition of the fourteenth amendment. Thus, it is frequently required that they fence their tracks and as a penalty for a failure to fence, double damages in case of loss are inflicted: *Missouri Pac. Ry. Co.* v. *Humes,* 115 U. S. 512 (6 Sup. Ct. 110: 29 L. Ed. 463). But this and all kindred cases proceed upon the theory of a special duty resting upon railroad corporations by reason of the business in which they are engaged, a duty not resting upon others; a duty which can be enforced by the legislature in any proper manner; and whether it enforces it by penalties in the way of fines coming to the state, or by double damages to a party injured, is immaterial. It is all done in the exercise of the police power of the state and with a view to enforce just and reasonable regulations."

Now, in that case it was pointed out that there was no special duty resting upon the railroad company to fence its tracks. The legislature of that state had not deemed it necessary, for the protection of life or property, to

require railroads to fence their tracks, and as no duty was imposed, there could be no penalty for nonperformance; hence no valid reason could be found in that case upon which to base the attempted classification. But such is not the situation here. Under this statute a special duty is imposed upon railroads to furnish cars within certain specified times to intending shippers.

In the more recent case of *Atchison, Topeka & S. F. R.* v. *Matthews,* 174 U. S. 96 (19 Sup. Ct. 609: 43 L. Ed. 909), involving the validity of a similar provision in a statute of Kansas, the court, in an opinion by the same justice, sustained the statute, distinguishing that case from the Ellis case upon the point above considered. The holding of the court in the Matthews case has since been cited and followed by that court in a number of cases: *Fidelity Mutual Life Ass'n* v. *Mettler,* 185 U. S. 308 (22 Sup. Ct. 662: 46 L. Ed. 922) ; *Farmers' M. Ins. Co.* v. *Dobney,* 189 U. S. 301 (23 Sup. Ct. 565: 47 L. Ed. 821).

Other errors assigned for a reversal of the judgment have been considered, but we find no substantial error therein.

The judgment is affirmed.                    AFFIRMED.