Argued on demurrer June 17, demurrer sustained July 14, 1916.

# PATTON v. WITHYCOMBE.*

(159 Pac. 78.)

**Statutes—Initiative Statutes—Legislative Repeal.**

1. The Constitution does not deny to the legislature the right to amend or repeal a statute enacted by the people in the exercise of the initiative.

[As to self-executing provisions of Constitution, see note in Ann. Cas. 1914C, 1116.]

**Statutes—Repeal—Constitutional Requirements.**

2. Even though an independent act, complete within itself, works a repeal by implication, the repealing statute is not pregnable for failure to observe Article IV, Section 22, of the Constitution, declaring that no act shall be revised or amended by mere reference to its title, but the act amended shall be set forth at full length.

**Elections—Primaries—Filing for Nomination—Statutes—Validity.**

3. Although Laws of 1913, page 183, forbids nomination of candidates for public office by political parties except as provided by Sections 3349–3391, L. O. L., inclusive, as to direct primaries the legislature, by Laws of 1915, page 124, provided an additional method of nomination by filing and payment of fees which is valid in view of the facts that the legislature may amend an initiated statute, and that there is no conflict.

**Constitutional Law—Elections—Nominations—Free and Equal Elections—Privileges and Immunities.**

4. Laws of 1915, page 124, providing for nominations for primary election by payment of fee, as a method additional to that of Laws of 1913, page 183, providing for nominations without fee on petition, is not invalid as violating Article II, Section 1, of the Constitution, requiring all elections to be free and equal, or Article I, Section 20, prohibiting privilege or immunity legislation, since no distinction is made on the ballot, and the candidate may elect the method he will follow.

Original proceeding in Supreme Court.

In Banc. Statement by Mr. Justice Harris.

Upon the petition of H. M. Patton an alternative writ of *mandamus* was issued by this court, directing

---

*As to the constitutionality of the primary election law, generally, see notes in 22 L. R. A. (N. S.) 1136; 41 L. R. A. (N. S.) 132. And for authorities passing on the question of validity of fee exacted for filing nominations, see note in L. R. A. 1915B, 197.          Reporter.

James Withycombe, as Governor of Oregon, to refrain from issuing a proclamation, declaring that Gus C. Moser, A. W. Orton, Conrad P. Olson, S. B. Huston and Robert S. Farrell were nominated at the primary election as the Republican candidates for the five offices of state senator for the thirteenth senatorial district, and to refrain from issuing certificates of nomination to any of those persons, and that the Governor proclaim that the petitioner was nominated, and issue him a certificate of nomination, or show cause for not doing so.

The defendant filed a demurrer, and consequently the questions for discussion arise out of the allegations found in the writ. A general primary nominating election was held throughout the state on May 19, 1916, for the nomination of candidates for different offices, including five senatorships for the thirteenth senatorial district, which comprises Multnomah County only. Complying with the direct primary nominating elections law, H. M. Patton filed a petition with the Secretary of State as a candidate for the Republican nomination for the office of state senator in the thirteenth senatorial district. Gus C. Moser, A. W. Orton, Conrad P. Olson, S. B. Huston and Robert S. Farrell each filed a declaration of candidacy for the Republican nomination for the office of state senator for the thirteenth senatorial district with the Secretary of State, and paid the fees prescribed by Chapter 124, Laws of 1915. The name of the petitioner, as well as the names of the other five persons, were printed as candidates for the Republican senatorial nominations on all of the official primary nominating ballots which were submitted to and used by the voters of the Republican party in Multnomah County. A canvass of the votes cast at the primary election showed that

Moser, Orton, Olson, Huston and Farrell each received more votes than Patton. It is alleged, however, that the five persons mentioned were not lawful candidates, for the reason that the act of 1915 is void, that Patton received more votes than any other lawful candidate, and that therefore he is entitled to a certificate of nomination.                                   DEMURRER SUSTAINED.

For petitioner there was an oral argument by *Mr. Wilson T. Hume.*

For Governor Withycombe there was an oral argument by *Mr. George M. Brown,* Attorney General.

There was an oral argument by *Mr. F. W. Mulkey, amicus curiae.*

MR. JUSTICE HARRIS delivered the opinion of the court.

The argument of the petitioner proceeds upon the theory that the legislative act of 1915 is unconstitutional because it requires the payment of a fee, that all persons who followed that statute were unlawful candidates; and that therefore all votes cast for those persons were deposited for unlawful candidates, and should not be counted. The petitioner announced his candidacy in compliance with the provisions of the direct primary nominating elections law, which was adopted by the people in the exercise of the sovereign right of initiative at the general election held on June 6, 1904 (Chapter 1, Laws 1905; Sections 3349–3391, 2 L. O. L., inclusive), but the other five persons filed their declarations of candidacy in the manner prescribed by the legislative act found in Chapter 124, Laws of 1915. The direct primary nominating elec-

tions law permits a person to become a candidate for a party nomination by filing a petition signed by a specified number of voters belonging to that party, but no fee is required to be paid by the candidate. If the petition is signed by the required number of voters, it must be filed without the payment of any fee, and the name of the candidate must be printed on the official ballot. The legislative act of 1915 provides that:

"Any registered elector may become a candidate for his or her party's nomination for any office to which he or she is constitutionally eligible * * in addition to the method now provided by law, by filing declaration of his or her candidacy, as herein provided and accompanying said declaration with the required filing fee."

The fees are fixed at $150 for United States senator; $100 for offices to be voted for in the state at large, except national committeemen, delegates to national party conventions and presidential electors; $100 for representatives in Congress; $50 for certain district offices; $20 for county offices, except district offices within the county; $10 for senator and representative in the legislature; $15 for national committeemen, delegates to national party conventions and presidential electors; and $5 for district offices within the county. Upon the filing of the declaration and the payment of the required fee, "said candidacy shall be deemed complete," and the name of such candidate is then "printed upon the official ballot at the ensuing primary election, and no additional signatures or fees shall be required to make said candidacy complete and effective."

1–3. While the Constitution does not deny to the legislature the right to amend or repeal a statute enacted by the people in the exercise of the initiative (*Straw* v. *Harris,* 54 Or. 424, 431 (103 Pac. 777), yet it is plain that the legislative act of 1915 was not de-

signed to amend, revise or repeal the initiative statute of 1904, and consequently the second act was not passed in violation of Article IV, Section 22, of the state Constitution, which declares that:

"No act shall ever be revised or amended by mere reference to its title, but the act revised or section amended shall be set forth and published at full length": *Sheridan* v. *City of Salem,* 14 Or. 328, 337 (12 Pac. 925); *State* v. *Rogers,* 22 Or. 348, 365 (30 Pac. 74).

Even though an independent act, complete within itself, works a repeal by implication, the repealing statute is not pregnable on account of a failure to observe Article IV, Section 22: *Warren* v. *Crosby,* 24 Or. 558, 563 (34 Pac. 661); *Northern Counties Trust* v. *Sears,* 30 Or. 388, 399 (41 Pac. 931, 35 L. R. A. 188). The second statute employs the most positive language in expressing its purpose. The title introduces the act by declaring that it is "an additional method, whereby electors may become candidates for party nominations." Section 1 provides that an elector may become a candidate for a party nomination "in addition to the method now provided by law * * as herein provided." The final section directs that:

"In case any candidate for office shall elect to become a candidate under the provisions of Section 3361 of Lord's Oregon Laws, he shall be required to file the following declaration."

Section 3361 relates to the form of the petition to be circulated and filed when following the provisions of the statute of 1904. It is true that the title of the initiative act asserts that one of its purposes is to forbid "the nomination of candidates for public office by such political parties in any other manner," and Section 11, being Section 3359, L. O. L., amended by Chap-

ter 108, Laws of 1913, affirms that every political party embraced by the primary law ''shall nominate all its candidates for public office, under the provisions of this law and not in any other manner''; but since there is no constitutional obstacle to prevent the legislature from providing for another method, the language last quoted from the 1904 statute offers no impediment to subsequent legislation, whether by the people or the legislative assembly, and consequently the force of the words found in the 1904 legislation, declaring that there shall be no other method of nominating candidates, is reduced and weakened to the extent that an additional method is provided by a subsequent statute. The act of 1915 is a complete and independent statute, which declares that its purpose is to afford another method, in addition to the one already provided, for becoming a candidate for a party nomination. The elector is not obliged to follow both methods, but he has the option of choosing either one or the other. He has the privilege of filing a petition, signed by a certain number of voters, without the payment of any money, or, if he chooses, he may become a candidate by merely filing a declaration and paying the specified fee. The petitioner exercised his option by filing a petition, and no fee was required from him, while the other candidates merely filed declarations and paid the fees required by the act of 1915.

4. The petitioner contends that the legislative act of 1915 is void because it violates Article II, Section 1, which commands that ''all elections shall be free and equal,'' and for the reason that it infringes upon Article I, Section 20, of the state Constitution, guaranteeing that:

''No law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.''

The adjudications dealing with statutes which exact the payment of fees by candidates for party nominations may be divided into three classes. The language found in *Johnson* v. *Grand Forks County,* 16 N. D. 363 (113 N. W. 1071, 125 Am. St. Rep. 662), warrants its citation as an authority for the doctrine that no fee, whether nominal or otherwise, can be exacted. The second class of cases embraces those which deny the right to charge any fee in excess of a nominal sum, and yet from the reasoning employed seem to authorize the payment of a nominal sum: *People* v. *Election Commrs.,* 221 Ill. 9 (77 N. E. 321, 5 Ann. Cas. 562); *Ballinger* v. *McLaughlin,* 22 S. D. 206 (116 N. W. 70); *State* v. *Drexel,* 74 Neb. 776 (105 N. W. 174); *Ledgerwood* v. *Pitts,* 122 Tenn. 570 (125 S. W. 1036). The remaining class includes all those precedents for the doctrine that a reasonable fee may be collected, as in *Riter* v. *Douglass,* 32 Nev. 437 (109 Pac. 444); *State* v. *Brodigan,* 37 Nev. 492 (143 Pac. 238, L. R. A. 1915B, 197); *Socialist Party* v. *Uhl,* 155 Cal. 776 (103 Pac. 181); *State ex rel.* v. *Nichols,* 50 Wash. 508 (97 Pac. 728); *State* v. *Scott,* 99 Minn. 145 (108 N. W. 828); *Kenneweg* v. *Alleghany County,* 102 Md. 119 (62 Atl. 249). The contrariety of judicial opinion is illustrated by *State* v. *Drexel,* holding that a fee of one per centum of the emoluments of the office was unconstitutional, and by *State ex rel.* v. *Nichols,* where the court sustained a fee of one per centum of the salary attached to the office. The first and second classes of cases proceed upon the theory that the Constitution fixes the qualifications for an elector, and that the legislature cannot, by a mere statute, add as a qualification for the right to be a candidate for a party nomination the payment of a fee, especially if it exceeds a nominal sum. The adjudications embraced by the

third class are founded upon the principle that the payment of a fee is only a regulatory measure, and so long as the amount is reasonable, no valid objection is available.

The successful candidates gained no advantage over Patton when they filed their declarations under the act of 1915, because their names were printed on the same ballot and exactly as they would have appeared if they had filed petitions as the petitioner did. There is nothing on the printed ballot to indicate the method selected by the candidate, but his name is printed on the ballot, which is submitted to the voter, in the same place, manner and form, whether a petition is filed under the 1904 act or a declaration is made pursuant to the statute of 1915. It is argued, however, that the second statute enables a rich person to become a candidate when perhaps the electors might be unwilling to sign a petition; but this argument fails when viewed in the light of local history, for it is common knowledge that no person has failed to secure a sufficient number of signatures on account of any unwillingness of electors to sign his petition. It is true that all voters will not sign all petitions, but it is also true that electors will usually sign a petition, when requested, to enable the petitioner to become a candidate. The act of 1915 does not, in any way, add to the qualifications of an elector who desires to become a candidate. No person is obliged to pay a fee, for the method requiring a fee is optional. The elector may create the right to become a candidate, either by a mere declaration and the payment of a fee, or by a petition without a fee, and a statute requiring the payment of a reasonable fee places no obstacle or impediment in the way of a person whether he be rich or poor, so long as another method like the one here requiring no fee is open

to him, especially when the name of the candidate is printed on the ballot without regard to the method selected. The existence and availability of one concededly valid method destroys the reason assigned in support of the asserted objection to the second and additional method, and when the reason fails, the objection ought to fail with it. It is not necessary to determine what the effect of the 1915 statute would be if it stood alone. The required fees are not unreasonable in amount, and the demurrer to the alternative writ is sustained.                        DEMURRER SUSTAINED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE EAKIN not sitting.