Argued April 7; peremptory writ of manadamus denied
April 25, 1933

# STATE ex rel. THOMAS v. HOSS

(21 P. (2d) 234)

*Fred A. Williams*, of Salem, for plaintiff.

*I. H. Van Winkle*, Attorney General, for defendant.

ROSSMAN, J. This is a proceeding instituted in this court by C. D. Thomas, Deputy Labor Commissioner, to require the Secretary of State, in his capacity as auditor of accounts (Oregon Constitution, Article VI, section 2) to audit plaintiff's claim for salary for the month of March in the sum of $180, and to issue to him a warrant therefor.

The petition alleges that, pursuant to the authority vested in the Commissioner of the Bureau of Labor (Hon. Charles H. Gram) by section 49-108, Oregon Code 1930, that official appointed the plaintiff to his position, and fixed his salary at $180 per month. It alleges that, although the plaintiff presented to the defendant his salary voucher for the month of March in the sum of $180, with the approval of the Commissioner of the Bureau of Labor attached thereto, and that, although the plaintiff demanded that the defendant audit the claim for $180, the defendant refused to do so. Attached to the petition as an exhibit is a communication signed by the defendant and addressed to Mr. Gram, a copy of which follows:

"I am herewith returning voucher No. F.3552 covering salary for the month of March for C. D. Thomas, Chief Boiler Inspector, claimed in the sum of $180, for the following reason: The Oregon State Board of Control, acting under the provisions of chapter 451,

Oregon Laws, 1933, has filed a certificate in my office establishing the salary of Mr. Thomas at $172 per month. Wherefore, I decline to audit the said claim or issue a warrant on the State Treasurer for the said amount of $180 as requested by you''.

The answer admits all of the foregoing with the exception that it denies that the sum of $180 is due to the plaintiff. It avers that, pursuant to the provisions of 1933 Session Laws, chapter 451, the State Board of Control reduced the salary of the plaintiff to the sum of $172; that it made the appropriate certificate to the defendant; that he is ready to audit the plaintiff's claim in that sum and issue to him a warrant therefor. To the answer the plaintiff interposed a demurrer on the ground that the answer does not state facts sufficient to constitute a defense.

Chapter 451, 1933 Session Laws, is as follows:

''AN ACT To provide for a temporary reduction in salaries of state officers, officials and employees; providing for adjustments in that regard to be made in certain cases by the board of control of the state of Oregon; providing for the duration and period of this act; and declaring an emergency.

*Be It Enacted by the People of the State of Oregon:*

Section 1. That every officer, agent or employe of the state of Oregon whose salary is not fixed by legislative enactment be and such salaries hereby are reduced in the following proportions from the basic salary for such respective position prevailing when first salary reductions were made during the 1931-1932 biennium, to wit:

Employees receiving $50 or less per month, 5 per cent.

Employees receiving $51 to $75 per month, 7 per cent.

Employees receiving $76 to $100 per month, 9 per cent.

Employees receiving $101 to $125 per month, 11 per cent.

Employees receiving $126 to $150 per month, 12 per cent.

Employees receiving $151 to $175 per month, 13 per cent.

Employees receiving $176 to $200 per month, 14 per cent.

Employees receiving $201 to $225 per month, 15 per cent.

Employees receiving $226 to $250 per month, 16 per cent.

Employees receiving $251 to $275 per month, 17 per cent.

Employees receiving $276 to $300 per month, 18 per cent.

Employees receiving $301 to $325 per month, 19 per cent.

Employees receiving $326 to $350 per month, 20 per cent.

Employees receiving $351 to $375 per month, 21 per cent.

Employees receiving $376 to $400 per month, 22 per cent.

Employees receiving $401 to $425 per month, 23 per cent.

Employees receiving $426 to $450 per month, 24 per cent.

Employees receiving $451 to $475 per month, 25 per cent.

Employees receiving $476 to $500 per month, 26 per cent.

Employees receiving $501 to $525 per month, 27 per cent.

Employees receiving $526 to $550 per month, 28 per cent.

Employees receiving $551 to $599 per month, 29 per cent.

Employees receiving $600 or more per month, 30 per cent.

That consideration should be given to special fitness, experience, ability and dependability, and it is proper that said scale of reduction be made subject to variations in certain cases, and the board of control of the state of Oregon be and it hereby is authorized and empowered to make such changes, increases to or reductions from the general schedule above set forth as may work out justice in each individual case.

Section 2. Each and every departmental head shall submit to the state board of control a complete list of employees whose salaries for the same employment were increased during the 1931 and 1932 biennium, and any such salary increases made during the said biennium are hereby declared to be of no force and effect for the purpose of the application of the schedule indicated in section 1 of this act. Upon the taking effect of this act each departmental head of any state activity, board, institution or commission must furnish to the state board of control a complete roster showing the salary of each and every employe prior to the time this salary reduction became effective, together with a complete roster showing the revised salary in accordance with this act. Before the secretary of state shall issue any salary vouchers the state board of control must certify that the salary reduction herein provided has been complied with.

Section 3. The board of higher education of the state of Oregon be and it hereby is given power and authority to readjust salary schedules and the salary base as affecting payrolls under its jurisdiction in the same manner that the board of control is given authority by the terms of this act to readjust salaries in other state departments.

Section 4. That for the period of the emergency hereinafter specified, the salaries of all officials and officers of the state of Oregon whose salaries and compensation are fixed by legislative enactment and whose salaries may, under the constitution, be reduced during their term of office by the legislative assembly shall be reduced in the same proportion and amount as specified in section 1 hereof for appointive officials

and employees; that the board of control of the state of Oregon shall in like manner adjust such decreases in order that justice be accomplished in each individual case.

Section 5. This measure is an emergency measure and shall be effective as of March 1, 1933, and thereafter until, but not later than March 1, 1935.

Section 6. In the event that any portion, part, sentence or clause of this act shall be for any reason held void or unconstitutional, then, as to the remainder of this act, the same shall be and continue in full force and effect and the legislative assembly hereby declares that it would have passed the remainder of such act had the part so held to be invalid not have been inserted therein.

Section 7. All acts and parts of acts in conflict herewith be and such acts and parts of acts hereby are suspended in their operation until March 1, 1935. This act and the various provisions thereof shall be ineffective after March 1, 1935.

Section 8. In view of the financial emergency now existing and considering the economic condition of the people of this state, and for the preservation of the public peace, health and safety, an emergency hereby is declared to exist and this act shall be in full force and effect from and after its approval by the governor''.

The act was approved by the Governor of this state March 15, 1933.

The plaintiff contends that the above statute infringes upon our State Constitution in the following particulars: (1) That, since it did not become effective until March 15, 1933, its application to the portion of the plaintiff's salary earned prior to March 15 violates article I, section 21, which prohibits the impairment of the obligations of contracts; (2) that, since the act does

not incorporate within itself all prior salary legislation, it infringes upon article IV, section 22, Oregon Constitution, which prohibits the revision or amendment of laws by mere reference to their titles; (3) that, since the act authorizes the State Board of Control to make equitable adjustments in the application of the schedules recited in the 1933 act, it delegates legislative powers to the Board of Control in violation of article III, section 1, and article IV, section 1, Oregon Constitution, both of which provide that the legislative power shall be exercised by the legislative assembly.

■ The act was approved by the Governor March 15, 1933, but, since it declares that a public emergency demands that it become effective at once, its effective date was March 15, 1933: Article IV, section 28, Oregon Constitution; *Bennett Trust Co. v. Sengstacken,* 58 Or. 333 (113 P. 863). Thus, the plaintiff had already earned fifteen days of his March salary before this new item of legislation found its way into the statute books. Since the plaintiff's salary is not protected by any constitutional provision against reduction, the legislature was at liberty at any time to reduce its amount. But it is settled that after a salary has been earned the public employee's right thereto becomes vested and cannot be taken away by any legislation thereafter enacted: *People ex rel. Newcomb v. McCall,* 94 N. Y. 587; *Board of Commissioners v. Lindeman,* 165 Ind. 186 (73 N. E. 912); *Toronto v. Salt Lake County,* 10 Utah 410 (37 P. 587); Lewis' Sutherland Statutory Construction, p. 546, § 284. We, accordingly, conclude that the amount of salary earned by the plaintiff prior to the time when 1933 Session Laws, chapter 451, became effective was not subject to the reduction specified in that act.

We shall now consider the contention that the act infringes on article IV, section 22, Oregon Constitution. This portion of our constitution provides:

"No act shall ever be revised or amended by mere reference to its title, but the act revised or section amended shall be set forth and published at full length".

It is manifest that there are many legislative enactments fixing the amounts of salaries of state officials, and others conferring authority upon officials to fix the wages of the employees of the various bureaus, commissions and state institutions. None of these many statutes is mentioned in the act under consideration. In proceeding with its purpose to economize in the expenditure of the public moneys, the act regards these salaries as facts and is indifferent to the circumstances that these facts are established by legislation. It will be observed that the act is not primarily salary legislation; it does not undertake to fix salaries in the manner that employers generally do by gauging the worth of the employee's services, but that its aim is to effect a saving for the state. It compels those to yield to the state the largest contribution in the form of a salary reduction who can best afford to do so. While it is not an income tax, the economic reasons which support it are more akin to those which support income taxes than those which prompt salary measures. The real purpose of the law is to make income and outgo meet.

In the early case of *City of Portland v. Stock*, 2 Or. 69, this court considered the purpose of article IV, section 22, of our constitution. It there declared:

"This section was adopted for good reasons. It has been a custom with our legislatures to amend existing laws by mere reference to their titles, and under that cover to change words and phrases anywhere in its

sections, to insert and strike out sentences; to repeal parts of sections at one session, and at the next to re-repeal and amend until it had become a real task to discover what was the existing statute on many subjects, and without the utmost watchfulness the legislators could not know the extent or effect of proposed amendments''.

In the following volume of our reports we find an application of this section of our constitution to a legislative act which is not substantially dissimilar to the one now before us, except in the particular that it granted an increase in salaries. In *Bird v. The County of Wasco,* 3 Or. 282, the court considered the validity of that enactment (approved October 21, 1864) which granted to public officers in the counties east of the Cascade mountains an increase in their fees of 33 1/3 per cent. The act at that time in effect was one which had been approved January 19, 1855, but which was repealed by an act which took effect May 1, 1865. If the act of October 21, 1864, were merely an amendment to the 1855 act, then it would not conform to the constitutional provision now before us, and, hence, would have been invalid. The plaintiff in that case sought the increased compensation granted by the 1864 act, and contended that that enactment was not a mere amendment to the 1855 act but was an independent item of legislation, complete within itself. In sustaining his contention, the decision pointed out: ''There is nothing in the title, the preamble, or the body of the act which, in my opinion, warrants the conclusion that it was intended merely as an amendment to the act of January 19, 1855. I am of opinion that it is an original, independent act''. In *Dolan v. Barnard,* 5 Or. 390, this court again expounded the purpose which this

constitutional provision serves, in the following language:

"Hence, the legislator is required by our constitution to set out and incorporate in the amendatory act not only the changes made in the act amended, but the portions thereof not affected by the amendment in such manner that the syntax and meaning of the law as amended will be complete within itself. This is required in order that those who are interested in knowing what the law is may find it out without prospecting through a labyrinth of words, phrases and sentences, as found in a long list of acts amendatory of the other, to ascertain what the law is in force at the time".

In *Warren v. Crosby*, 24 Or. 558 (34 P. 661), the court was confronted with an act enacted in 1893 which invested county officers with power to assess and collect taxes. An enactment of a prior session had granted to the city of Astoria its charter, conferring power upon the common council of that city to assess, levy and collect taxes for municipal purposes. It will be observed that the two acts were in conflict with one another and yet the 1893 act did not recite the provisions of the city charter aforementioned. In announcing the decision in that case, Mr. Justice LORD reviewed at length the purposes which article IV, section 22 of our constitution, were intended to serve, and also stated the difference between an act purely amendatory in scope and an independent, original item of legislation. We quote from that decision:

"The evil it sought to remedy was the mode in which the legislative power was sometimes exercised in the enactment of revisory or amendatory laws. This evil, as is well known, was the practice of amending or revising laws by additions or other alterations, which, without the presence of the original law, were usually unintelligible. * * * Legislators were often deceived and the public imposed upon by such modes of legis-

lation. To prevent these consequences, and to secure a fair and intelligent exercise of the lawmaking power, was the object of the constitutional provision in question. * * * If the act is in itself complete and perfect, and is not amendatory or revisory in its character, it is not interdicted by this provision, although it amends by implication other legislation upon the same subject. Such an act, although it may operate to change or modify prior acts, is not within the mischief designed to be remedied by said section 22. * * * Statutes which amend or repeal others by implication are not obnoxious to the constitution. If, therefore, the general act now in question is complete in itself as an independent act of legislation, although it may operate to change or modify some prior law, it does not fall within the constitutional inhibition, and is valid. In form the act is original and not amendatory. * * * It does not assume to amend or revise any prior general or special act, or section thereof, but by conferring on the county officers the power to assess and collect taxes for the cities and school districts of the state, it had an amendatory effect by implication upon such prior legislation as conferred that power on such cities and school districts. * * * But the act does not purport to be an amendment of any previous statute, special or general; it is an independent act of legislation, complete and perfect in itself. The power conferred, and the duties imposed, and all matters connected therewith, are specified in the body of the act. It shows on its face what the law is to be. Neither the legislators nor the public could fail to discover its purpose and meaning without reference to any prior legislation upon the same subject. * * * The adjudications are numerous to the effect that an act which does not assume to amend prior legislation, and is a complete and perfect act in itself,—its purpose and scope apparent on its face,—is not interdicted by the constitution, although it amends by implication other statutes on the same subject''.

After pointing out once more that the act did not assume in express terms to revise, alter or amend any

prior acts, but nevertheless accomplished that purpose by implication, the decision upheld the validity of the general act and concluded that it repealed the sections of the previous act which had granted to the city the power to assess and collect taxes. In *Northern Counties Trust v. Sears,* 30 Or. 388 (41 P. 931, 35 L. R. A. 188), this court upheld the validity of a legislative enactment of 1893 which made changes in the compensation of county officers but which did not incorporate within itself the previous enactments prescribing the pay of those officials. The attack upon the enactment was that its omission to recite the acts amended, repealed and revised brought it into conflict with article IV, section 22, Oregon Constitution. In upholding the validity of the act, this court said:

"True, the title of the act purports to change in part 'the compensation, mode of payment', etc., of certain public officers, and 'to repeal certain provisions of statute', but the act itself accomplishes the object of its enactment by force of its own terms and provisions, and its scope and purposes are perfectly manifest upon the face of it. It does not purport to revise or amend any section of the statute, or any previous enactment of the legislature, and it is none the less an original and independent act if its extraneous operation does not affect other statutes".

In *Patton v. Withycombe,* 81 Or. 210 (159 P. 78), Mr. Justice HARRIS, after quoting article IV, section 22, Oregon Constitution, declared:

"Even though an independent act, complete within itself, works a repeal by implication, the repealing statute is not pregnable on account of the failure to observe section 22, article IV".

Our interpretation and application of the above section of our constitution in the foregoing instances is in harmony with the interpretation and application of

similar constitutional provisions in other jurisdictions. For a review of the authorities see Lewis' Sutherland, Statutory Construction (2d Ed.) § 239; Cooley's Constitutional Limitations (8th Ed.) p. 313; 25 R. C. L., Statutes, p. 874, § 119; 59 C. J., Statutes, p. 610, § 169.

Since the purpose of article IV, section 22, Oregon Constitution, is to secure upon the face of every bill a full disclosure of its purpose, so as to enable the members of the legislature to know what they are doing, and to afford to all others an opportunity to acquaint themselves with the purpose of the bill, it seems clear that the act under consideration does not offend against this purpose. The objective of the 1933 act is to reduce the sums to be expended by the state for salaries and wages. The percentage cut from the public payroll is clearly set forth by the act, and no one interested in the subject need consult any other legislative acts. To have engrafted upon this act all of the various acts in reference to salaries and wages would not have been helpful because most of the salaries paid to the public employees are not fixed by legislative act but by the heads of boards, bureaus, commissions and institutions. A holding that the author of such a bill must incorporate in it all of the various acts in reference to salaries and wages would create a serious evil. The prolixity thus produced would place before all legislators a mass of matter through which they would be compelled to grope in search of the purpose of the bill. Likewise, the draftsman of the bill, confronted with the task of reading all of our various laws in reference to salaries and wages so as to assure himself that he had overlooked none, would very likely soon abandon his efforts rather than proceed. This act, in our opinion, is complete within itself. It is independent of those acts passed by

previous sessions of the legislature which granted to the public employees a specific salary based upon the value of their services, and, for an entirely different purpose, slashes from all salaries a prescribed percentage so as to bring the expenditures within the income. It is an independent act of legislation. Without the assistance of any other legislation, it reveals upon its face what the new law is; that is, the amount of reduction which it imposes. We, therefore, conclude that it does not conflict with article IV, section 22, Oregon Constitution.

It is next contended that the act undertakes a grant of legislative power to the Board of Control. This argument is based upon that part of the act which authorizes the Board of Control to make adjustments in behalf of employees where "special fitness, experience, ability and dependability" suggest the appropriateness of such course. If full effect were yielded to that part of the statute it would be possible for the Board to make adjustments in (a) salaries fixed by legislative act; and (b) salaries fixed by some official, board or commission empowered to do so by legislative act.

Before considering this contention, let us familiarize ourselves a little further with the meaning of the act. Its title declares a purpose "to provide for a temporary reduction in salaries" and makes no reference to increases. The Board, therefore, is not authorized by this act to increase any wages or salaries. Next, the act selects as the basis for its operation salaries as they were December 31, 1930, whether fixed by statute or by official order. All increases since that time must be disregarded. The reductions specified in the act go into effect at once, even though the Board takes

no action. It contemplates that relief from the full reduction specified by it shall come only from the exercise of the discretionary power invested in the Board which is to be exercised only on behalf of "special fitness, experience, ability and dependability". The act authorizes adjustments only in the application and within the scale of the reductions prescribed by it.

 Let us now determine whether this final contention of the plaintiff possesses merit. If any part of the act contemplates that salaries fixed by legislative act shall be readjusted by the Board of Control, that part of the act is clearly invalid: *Winslow v. Fleischner,* 112 Or. 23 (228 P. 101, 34 A. L. R. 826). But we are aware of no reason why the legislature cannot invest the Board of Control with discretionary power to apply the scale of reductions prescribed in the act to salaries fixed by the legislature, provided this act specifies the instances in which the Board shall make the occasional authorized adjustments. It will be observed that the Board is authorized to exercise its power only on behalf of "special fitness, experience, ability and dependability". In such instances the full reduction specified in the act need not be applied, but the Board cannot grant an increase. This provision, in our opinion, is valid: *State v. Burckhard,* 135 Or. 86 (294 P. 1103). The authority to exercise discretion in the application of the scale of reductions to salaries fixed by official action presents no difficult problem. Legislation enacted by previous sessions had already conferred upon the Board broad powers, and since the legislature could have conferred upon the Board authority to determine the amount of plaintiff's salary (*State ex rel. v. Thompson,* 316 Mo. 272 (289 S. W. 338)), this act, which authorizes the Board to exercise discretion in the application of the

scale of reductions to his salary, offends against no constitutional provision investing the legislative power in the legislative assembly only.

It follows from the foregoing that the contentions of the plaintiff, except the one concerning the first half of his salary for the month of March, 1933, are, in our opinion, without merit. The demurrer will be overruled, and the petition will be dismissed.

RAND, C. J., BEAN, BELT, CAMPBELL and BAILEY, JJ., concur.

KELLY, J., not sitting.

---

BELT, J., concurring in part: In my opinion that part of the act purporting to delegate to the State Board of Control authority to "readjust" salaries fixed by legislative enactment is unconstitutional. Legislative power can not thus be delegated to a subordinate board or commission. Salaries fixed by legislative enactment should be reduced in accordance with the schedule set forth in section 1 of the act. In making such reductions the discretion of the State Board of Control is not involved. Aside from what has been said, I concur fully in the able opinion of Mr. Justice ROSSMAN.

BEAN, J., concurs.