Argued November 17, 1937; reversed January 11, 1938

## STATE *v.* COATS

(74 P. (2d) 1120)

In Banc.

*Bruce Spaulding*, District Attorney, of Dallas, and *Ralph E. Moody*, Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for the State.

*Walter L. Tooze*, of Portland, and *George R. Bagley*, of Hillsboro (John Steelhammer, of Salem, on the brief), for respondent.

BELT, J. The defendant Coats is charged, in an information filed by the district attorney, with having maintained and conducted, for money, a nickel-in-the-

slot machine in Polk county. From an order sustaining a general demurrer to the information, the State appeals.

■ The facts in the information setting forth the commission of the alleged crime are identical with those in the pinball machine case (*State v. Coats*) this day held to constitute a lottery. As stated in the companion case, a pinball machine and a nickel-in-the-slot machine come within the same category and must be judged by the same law. Hence, if the operation of a pinball game is a lottery, it logically follows that the operation of a slot machine constitutes a lottery.

■ While no section of the statute is referred to in the information, we assume from the briefs that the charge was brought under section 14-746, Oregon Code 1930, prohibiting the operation of nickel-in-the-slot machines. It is believed, however, that the facts alleged might also bring it within the statute prohibiting the operation of lotteries. It would be an anomalous situation, to say the least, if this court were to hold that the operation of one machine constituted a lottery and the operation of the other, having an identical description, was not a lottery. Common sense rebels against such a conclusion. Looking to the charging part of the information in the instant case, we find it alleges all the elements of a lottery. Hence, it is held that the operation of a nickel-in-the-slot machine constitutes a lottery and is in violation of the constitution. What was said in the pinball case is applicable here and need not be repeated.

■ Defendant contends that Chapter 369, Oregon Laws 1935, providing:

"That municipal corporations and counties be and they hereby are empowered to license, limit, regulate, impose a privilege tax or charge upon or prohibit pin ball games, dart games, and other games of like character involving an element of skill."

authorized the licensing of the nickel-in-the-slot machines described in the information. It is obvious that if the operation of a slot machine constitutes a lottery it violates the constitution, and the above statute, insofar as it purports to authorize the licensing of such machine, would be of no force or effect.

The decree of the lower court is reversed and the cause remanded for further proceedings.

BEAN, C. J., and RAND, ROSSMAN and LUSK, JJ., concur.

---

BAILEY, J. (specially concurring). The facts in the information setting forth the commission of the crime charged are identical with those in the information in the companion case of *State v. Coats*, designated by the parties as the lottery case, this day decided, with the exception that in that case the defendant was charged with the crime of setting up and promoting a lottery for money, while in this instance he is charged with a violation of the nickel-in-the-slot machine statute; and with the further exception that in the instant case the information also states that "the operation of said game is licensed by ordinance of the city of Independence, a duly incorporated municipal corporation in Polk county, Oregon." The defendant's demurrer to the information was sustained by the circuit court.

It is the contention of the defendant (1) that the information does not charge a violation of § 14-746, Oregon Code 1930, which prohibits the conducting and maintaining of nickel-in-the-slot machines wherein any element of chance is involved and the same are played for money or other thing of value; and (2) that if it be held that § 14-746, *supra*, is sufficiently broad to include a machine or device such as described in the

information herein, then the inhibition contained in that statute as to operation and maintenance of nickel-in-the-slot machines has no application to nickel-in-the-slot machines of the kind known as pinball games, for the reason that such a machine in this instance has been licensed by the city of Independence, pursuant to chapter 369, Oregon Laws 1935.

In the companion case of *State v. Coats* it is my opinion that the machine or device which the defendant is charged with unlawfully conducting, maintaining and using is a nickel-in-the-slot machine within the meaning and prohibition of § 14-746, *supra.* In support of his second contention the defendant argues that chapter 369, *supra*, has the effect of amending § 14-746, *supra*, or of suspending its operation, in those instances in which the games referred to in chapter 369 have been licensed pursuant to the provisions of said chapter.

Section 14-746, *supra*, is part of an act of 1901 entitled: "An act to prohibit the maintaining, conducting, operating, playing or using nickel-in-the-slot machines or other devices of like character wherein there enters any element of chance." Section 1 of the 1901 act is now codified as § 14-746, Oregon Code 1930, and refers to nickel-in-the-slot machines or other devices of like character wherein there enters any element of chance. It contemplates that in order to constitute the crime therein prohibited the machine or device referred to must be played for something of value, and in addition there must be present an element of chance in obtaining or failing to obtain something representative of value in return for the coin used to operate the machine or device.

The title of chapter 369, *supra*, is as follows: "An act to authorize municipal corporations and counties to license, limit, regulate and tax or prohibit certain

games involving an element of skill." The act consists of one section, which is thus worded: "That municipal corporations and counties be and they hereby are empowered to license, limit, regulate, impose a privilege tax or charge upon or prohibit pin ball games, dart games and other games of like character involving an element of skill." It is urged by the defendant that the machine which he is charged with unlawfully conducting, maintaining and using is a pinball game within the meaning of chapter 369, *supra*, and that, since the city of Independence has licensed the operation of said machine, the inhibition contained in § 14-746 is temporarily removed or suspended, so far as the licensed machine is concerned.

What was intended to be accomplished by chapter 369 is not clearly apparent from the title or the body of the act. It purports to confer upon counties and municipalities not only the right to license pin ball games, dart games and other games of like character involving an element of skill, but also purports to confer upon counties and municipal corporations the right to limit, regulate, impose a privilege tax or charge upon, or prohibit such games. If the licensing of such games by a city (and this would also apply if done by a county) removes the games from the inhibition of § 14-746, *supra*, then if the city should undertake to limit such games or regulate their use in any way or impose a privilege tax or charge upon them, the doing of any of those acts would as effectively repeal or nullify the prohibition contained in § 14-746 as would the affirmative act of licensing such machines. All that the city would have to do would be to provide, for example, that these machines be limited in number or that their use be restricted to certain districts in the city; or the city could even impose a privilege tax upon each and

every machine without requiring that the same be licensed. For it is not reasonable to assume that the legislature was conferring upon cities and counties the power to tax the same if their use and operation were prohibited by law.

The 1935 enactment refers to pinball games, dart games and other games of like character involving an element of skill. It makes no specific mention of machines or devices of the kind which § 14-746 forbids to be maintained, operated or used, nor could anyone by reading the title of the act or the act itself find therein any intimation of such a reference. No one could be expected in studying the act to know that the operation of the games therein mentioned, or of some of them, was prohibited by a criminal statute of the state of Oregon. Anyone reading the title of the act and the act itself would assume that the enactment was complete in itself, not amendatory or revisory of any existing statute.

Article IV, § 22, of the constitution of this state reads as follows: "No act shall ever be revised or amended by mere reference to its title, but the act revised or section amended shall be set forth and published at full length." In *Martin v. Gilliam County,* 89 Or. 394 (173 P. 938), Mr. Chief Justice McBride, after setting out the foregoing section and calling attention to the fact that the statute there under consideration did not comply with that section of the constitution, quoted with approval from Cooley on Constitutional Limitations, 5th Ed., 182, as follows:

"The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effects, and the public, from the difficulty in making the necessary examination and compari-

son, failed to become apprised of the changes made in the laws.''

The opinion thus continues:

"This act does not come within the spirit of the cases which very guardedly and reluctantly uphold repeals by implication. Here there is no attempt to enact a new and independent statute upon the same subject as the act of 1913, *supra*, but an attempt to insert into it, and by reference to it, certain provisions enlarging its scope without setting forth the statute as it would appear after being so revised. If it can be done in this instance there is no limit to the extent to which statutes can be revised or amended without setting forth the amended statute at full length, and the constitutional provision above quoted would, therefore, be rendered nugatory.''

Beginning with the case of *Warren v. Crosby*, 24 Or. 558 (34 P. 661), and consistently adhering thereto in a long line of decisions, this court has held that if an act is in itself complete and perfect, original in form and exhibiting on its face what the law is to be, its meaning and scope plain and apparent, and not amendatory or revisory in its character, such legislation is valid and does not come within the constitutional prohibition above quoted, although it may in effect change or modify some other law on the same subject.

In attempting to arrive at the intention of the legislature in enacting chapter 369, Oregon Laws 1935, one of the three following interpretations must be adopted: (1) The legislature intended to remove from the ban of § 14-746, and any other statute which might prohibit them, the games referred to in the 1935 act and confer upon counties and cities of the state of Oregon the regulation, licensing, taxing and prohibiting of games of the character contemplated by the 1935 act. If such had been the intention of the legislature, the 1935 act, al-

though it amends by implication § 14-746 and any other provisions of the criminal code in conflict with itself, does not violate § 22 of article IV, *supra*, by failing to incorporate in its entirety the law or laws to be amended: *Warren v. Crosby*, supra. By adopting that interpretation, such games as are mentioned in the 1935 act would be subject entirely to the action taken by counties and cities, and § 14-746 would no longer have any application to them. No one connected with this case, however, has advanced any such theory, and we do not believe that this intention was in the minds of the lawmakers.

The second interpretation is that which is relied upon by the defendant, namely, that the effect of § 14-746 on games included within the 1935 enactment is suspended in any county or city which licenses such games, attempts to regulate them or imposes a tax upon them. Counsel for defendant seem to prefer to call it a suspension of the operation of § 14-746 in so far as it affects pinball games, rather than an amendment of that law. Regardless of the terminology employed, the result would be the same. If this interpretation were adopted, then § 14-746 would in effect be amended and would, so far as the games referred to in chapter 369 are concerned, become a licensing statute; that is, the law would prohibit the operation of such games unless they were licensed, limited, regulated or a privilege tax imposed upon them by the county or city in which they were being conducted or maintained. In other words, in every case in which the district attorney would seek to enforce the provisions of § 14-746, *supra*, in connection with games mentioned in chapter 369, it would be necessary for him to ascertain whether any regulatory action had been taken by the city or county in which

such games were being played. That view of the effect of chapter 369 would render the 1935 enactment unconstitutional as not complying with the provisions of sections of article IV, *supra*, in that the 1935 act would not be complete in itself, while failing to set forth and publish at full length the section sought to be amended or revised, to wit, § 14-746, *supra*: *Board of Education v. Moses*, 51 Neb. 288 (70 N. W. 946); *Copland v. Pirie*, 26 Wash. 441 (67 P. 227, 90 Am. St. Rep. 769); *State v. Guiney*, 55 Kans. 532 (40 P. 926); *Gaston v. Thompson*, 89 Or. 412, 420 (174 P. 717).

The third and last interpretation possible to be placed on the 1935 enactment is that there was no intention on the part of the legislature in referring, in that enactment, to pinball games and other games of like character involving the element of skill, to include within that term nickel-in-the-slot machines or similar devices involving the element of chance and played for something of value. If that was the intention of the legislature, then there is not entailed here the question of whether chapter 369 is or is not an amendment of § 14-746.

In 59 C. J. at page 857, § 434, it is stated that:

"Ordinarily, for an amendment of a pre-existing law to be effective, the amendment must be express. It has been very generally stated that amendments of statutes by implication are not favored and will not be upheld in doubtful cases. Ordinarily, the legislature's enactment of a law will not be held to have changed a statute that it did not have under consideration at the time of enacting such law; and implied amendments cannot arise merely out of supposed legislative intent in no way expressed, however necessary or proper it may seem to be. An amendment by implication can occur only where the terms of a later statute are so repugnant

to an earlier statute that they cannot stand together. If, however, the statutes are so plainly repugnant that they cannot stand together, the old statute is regarded as amended by the new."

The terms of chapter 369, Oregon Laws 1935, are not so repugnant to those of § 14-746, Oregon Code 1930, that both statutes cannot stand together. It is by no means apparent, from a consideration of the wording of chapter 369, that the legislature intended that if a county or city should license or limit or regulate or impose a privilege tax or charge upon pinball games involving any element of chance, such act on the part of the city or county would remove from the prohibitory effect of § 14-746 a nickel-in-the-slot machine or other similar device involving any element of chance and played or operated for something of value, in other words, a mechanical gambling device.

In *Keeney v. State*, 54 Ga. App. 239 (187 S. E. 592), the defendant was charged with carrying on a lottery by the operation of a machine or device contrary to a statute of Georgia. His defense was that the machine or device which he was charged with operating contrary to law had, under a state statute, been taxed, and that therefore its operation was lawful. The court, in disposing of that contention, pointed out that the machine and its operation as set forth in the accusation constituted a lottery, and further stated:

"Therefore, in order that the defendant be immune from the provisions of the above section for the operation of such machines, it must be said that the general assembly by the general tax act of 1935, by implication, repealed so much of that section which prohibited the operation of such machines. Repeals by implication are not favored by the law. Central of Georgia Ry. Co. v. Leonard, 49 Ga. App. 689, 698 (176 S. E. 137), and cit."

After calling attention to a decision of the supreme court of Georgia in another case, the opinion continues as follows:

"However, we do not think that case controlling authority here; for we do not think the language of the act places a tax upon a machine which is operated in the manner set out in the indictment. In State v. Doon, R. M. Charlt. 1, it is said: 'The use of a faro table for the purpose of gambling, that is to say, for the purpose of winning and losing money, is not rendered lawful by the tax imposed on the instrument. The instrument so taxed, may be lawfully used for innocent purposes, as in the case of a billard table which is similarly taxed.' The tax imposed upon the game or device is for the purpose of raising revenue. When such game or device so licensed is used in a manner which constitutes it a lottery, the fact that its operation is licensed will not be construed to mean that it was intended to allow it to be operated as a lottery in violation of the criminal statutes of this state."

The proper and reasonable interpretation to be placed on chapter 369, Oregon Laws 1935, is that it in nowise, directly or by implication, effects a repeal or amendment of § 14-746, Oregon Code 1930.

For the reasons herein stated I concur in the majority opinion to the effect that the demurrer should have been overruled and that the judgment of the circuit court should be reversed.

---

KELLY, J. (dissenting). To a layman, it must seem strange that a judge should declare the maintenance and operation of a pinball machine to be a lottery and one which is not subject to license by the legislature or by any municipality under purported authority of legislative enactment, and at the same time that judge should hold that the information in this case is subject to

demurrer because it appears that the pinball machine described herein was licensed by the city of Independence.

The reason for the latter holding is that the information in the nickel-in-the-slot machine case does not charge that the machine in question and its operation constitute the conduct and promotion of a lottery. The constitution of the state prohibits lotteries and the legislature cannot license them or authorize any municipality to license them.

It is the opinion of the writer that the state has limited its position to the result of defendant's operation of a non-lottery pinball machine under a license by the city of Independence.

The only question, therefore, is whether the legislature had the authority to authorize the cities, towns and counties of the state to issue such a license.

No constitutional restriction upon such authority has been cited and the writer thinks that none can be found.

An act was passed by the legislature in 1935 purporting to grant such authority to cities, towns and counties.

The 1935 act (chapter 369, Oregon Laws 1935) is complete within itself. It simply confers upon the respective counties and cities the authority to license, regulate, tax or prohibit the games mentioned therein within the respective territorial jurisdictions of said cities and counties.

No one can read it without knowing exactly what its subject matter means. It is not vague, uncertain, indefinite, ambiguous or confusing. If the entire criminal code of the state were included in its context, it

would not be clearer, more direct or enlightening. Treating it as an amendment by implication of section 14-746, Oregon Code 1930, it is a valid enactment. Such amendments by implication are not affected by section 22, Article IV of the Oregon Constitution: Vol. 1, Cooley's Constitutional Limitations, 8th Ed. p. 315, and cases there cited.

Speaking of the provisions of said section 22 of Article IV of the Constitution, the late Mr. Chief Justice LORD said:

"The evil it sought to remedy was the mode in which the legislative power was sometimes exercised in the enactment of revisory or amendatory laws. This evil, as is well known, was the practice of amending or revising laws by additions or other alterations, which without the presence of the original law, were usually unintelligible. Acts were passed amending existing statutes by substituting one phrase for another, or by inserting a sentence, or by repealing a sentence, or a part of a sentence, in some portion or section thereof, which, as they stood, often conveyed no meaning, and, without examination and comparison with the original statute, failed to give notice of the change effected. By such means, an opportunity was afforded for incautious and fraudulent legislation, and endless confusion was introduced into the law. Legislators were often deceived and the public imposed upon by such modes of legislation. To prevent these consequences, and to secure a fair and intelligent exercise of the law-making power, was the object of the constitutional provision in question. This object it accomplished by imposing a limitation, not on the power of the legislature to make laws, but upon the mode in which that power should be exercised in the enactment of amendatory or revisory laws. If the act is in itself complete and perfect, and is not amendatory or revisory in its character, it is not interdicted by this provision, although it amends by implication other legislation upon the same subject. Such an act, although it may operate to change or

modify prior acts, is not within the mischief designed to be remedied by said section 22. 'Statutes', says Judge Cooley, 'that amend others by implication are not within this provision, and it is not essential that they even refer to the acts or sections which by implication they amend': Cooley Constitutional Limitations, 152. Hence, an act of the legislature, not amendatory in character, but original in form and complete in itself, exhibiting on its face what the law is to be,—its purpose and scope,—is valid, notwithstanding it may in effect change or modify some other law upon the same subject." *Warren v. Crosby*, 24 Or. 558 (561, 34 P. 661).

In the opinion from which the above quotation is made, the learned former chief justice, in commenting upon an earlier Oregon case, which declared the doctrine now asserted by the specially concurring opinion in the instant case, said:

"As the general act under consideration deprives the cities and school districts of the state of the power to assess and collect taxes, a power which had theretofore been conferred upon them by special and general laws, it is claimed that this is such a change or alteration of those laws in that particular as is amendatory, and that, unless the general law sets forth and republishes at length the part or section thereof as amended, it directly falls within the constitutional inhibition, and is void. Hence, as the effect of the act is to take from the city of Astoria the power conferred upon it by section 38 of its charter, to assess and collect taxes it is amendatory of that section and for like reason, unconstitutional. This construction of the constitutional provision in question is based on the assumption that any act of the legislature which, in effect, alters or changes an existing law, or part thereof, is an amendment of it, and void, unless it inserts the law at length, or such part as is changed or amended. In support of this construction we are cited to the case of State v. Wright, 14 Or. 369 (12 Pac. Rep. 708), in which Strahan, J. said: 'In legislation, an amendment means an alteration in

the draft of a bill proposed, or in law already passed: Rapaljer, Law Dict. Title, Amendment. So that if this act alters the legal effect of the charter of the city of Astoria in a particular already covered and provided for by the charter, then it is to be taken as an amendment of the charter. This is not a case where new and additional powers are added by way of supplement, but the change or alteration of an existing power; and I think that it is too plain for argument that it is an amendatory statute.' In that case the act under consideration provided, in substance that 'every person obtaining a license to sell spirituous or vinous liquors shall pay into the treasury of the county, city, or town granting such license the sum of three hundred dollars per annum and in the same proportion for a less period; or two hundred dollars per annum, and in the same proportion for a less period, for a license to sell malt liquors only; *provided*, that no license shall be granted for a less period than six months; and *be it further provided*, that no license to sell spirituous malt, or vinous liquors shall be granted by any incorporated city or town for a less sum than that hereinbefore specified,' etc. The effect of this act, if valid was to amend the charter of every city and incorporated town in the state. As the city of Astoria had the power conferred upon it by its charter to license and tax barrooms and drinking shops through its common council, and, in pursuance thereof, had passed an ordinance fixing the sum at two hundred dollars per annum, for which licenses were granted and issued, the effect of the act was to repeal such ordinance in so far as it fixed a different amount for the license than the sum prescribed by the act, and to limit the power of the common council, under the charter, to grant licenses for sums less than those named in the act. While, therefore, the effect of the act was to alter or change to this extent an existing power, it was produced by such act repealing *pro tanto*, by implication, the section of the charter which conferred it. The act itself was complete—its meaning and scope plain and apparent; nor was there anything on its face to evince an amendatory character. It was an independent act

of legislation designed to regulate the sale of liquor in the state. When an act of this character so operates as to modify or change prior acts of legislation, it does not fall with the mischief designed to be remedied by the constitution, although the effect is to alter or amend by implication some prior legislation upon the same subject. To hold otherwise, and give this constitutional provision the construction claimed, would be, in effect, to declare that the legislature is powerless to pass any act changing or altering in any respect the statute law of this state without reenacting and republishing at length every section of all prior statutes, general and special, that might be affected by the new statute. We do not think that such construction is tenable or sustained by the adjudications. Statutes which amend or repeal others by implication are not obnoxious to the constitution. If, therefore, the general act now in question is complete in itself as an independent act of legislation, although it may operate to change or modify some prior law, it does not fall within the constitutional inhibition, and is valid. In form the act is original, and not amendatory. It does not assume to amend or revise any prior general or special act, or section thereof, but by conferring on the county officers the power to assess and collect taxes for the cities and school districts of the state it had an amendatory effect by implication upon such prior legislation as conferred that power on such cities and school districts, and by its last section expressly repeals all laws providing for assessors in, or assessments of property in, school districts, incorporated towns, or cities'' * * *.

''In view of these considerations, in so far as the case of State v. Wright, is in conflict with the construction we have given to the constitutional provision in question, it must be considered as overruled.'' *Warren v. Crosby*, supra.

The doctrine of *Warren v. Crosby*, supra, as distinguished from that of *State v. Wright*, supra, has been approved in the following Oregon cases: *Idleman v. State*, 146 Or. 13, 21 (27 P. (2d) 305) ; *Columbia River*

*Longview Bridge Co. v. Wellington,* 140 Or. 413 (13 P. (2d) 1075); *Patton v. Withycombe,* 81 Or. 210 (159 P. 78); *State ex rel. Harth v. Phupps,* 136 Or. 454 (299 P. 1009); *State ex rel. Thomas v. Hoss,* 143 Or. 41 (21 P. (2d) 234).

It is said that if the 1935 enactment has the effect to amend in one certain way the prior statute prohibiting nickel-in-the-slot machines and similar devices, such 1935 law is valid, but if it has the effect to amend the earlier statute, in another way, the 1935 law is not valid, but unconstitutional. The test of whether a later statute, which is an independent act and which has the effect of repealing or amending an earlier statute is unconstitutional because the procedure required by section 22 of Article IV of the Constitution was not observed, is not how much of the earlier statute is amended, but only whether on its face the later enactment evinces an amendatory character. If not, and it is complete within itself and its meaning and scope are plain and apparent, it does not fall within the mischief designed to be remedied by said section 22 of Article IV of the Oregon Constitution.

As the late distinguished jurist Mr. Chief Justice LORD said:

"To hold otherwise, and give this constitutional provision the construction claimed, would be, in effect, to declare that the legislature is powerless to pass any act changing or altering in any respect the statute law of this state without reenacting and republishing at length every section of all prior statutes, general and special that might be affected by the new statute. We do not think that such construction is tenable or sustained by the adjudications." *Warren v. Crosby,* supra.

In the opinion of the writer, if the machine in question is not a lottery, and by the failure of the informa-

tion herein to charge that it is a lottery, we must assume for the purposes of this case that it is not, the city of Independence had the authority under chapter 369, Oregon Laws 1935, to issue a license for its operation. It appears that such a license was issued and operating a pinball machine thereunder cannot constitute a violation of an anti-non-lottery slot machine statute thus amended, suspended or superseded by implication.

In the opinion of the writer the demurrer to the information in the instant case was properly sustained.

It is stated that the legislature could not authorize a municipality to license or permit the commission of crimes within the boundaries of such municipality. The writer has not found a case holding to that effect in a jurisdiction wherein the constitutional provisions were the same as those of the Oregon Constitution.

On the contrary an early Texas case holds that the legislature was not prohibited from granting such authority to a municipality: *Davis v. State*, 2 Tex. App. 425. The Texas case just cited follows the case of *State v. Clark*, 54 Mo. 17 (14 Am. Rep. 471), which was followed by *State v. Vic De Bar*, 58 Mo. 395.

After the decision in *Davis v. State*, supra, the constitution of Texas was amended. When the decision was rendered, the Texas Constitution as to the right to suspend laws was practically the same as the Oregon Constitution. The amendment changed the constitutional provision so that a law could not be suspended except by the legislature. The later Texas cases hold that since that amendment was adopted the legislature could not delegate its authority to suspend a law, and hence the doctrine of *Davis v. State*, supra, could not be followed.

As an instance of the authority of the legislature to enact a law licensing an occupation declared by the statute to be a crime, we have a case from Tennessee: *State v. Duncan*, 16 Lea (Tenn.) 79. The effect of such a license is to suspend the general law during the term of the license.

It must be borne in mind that in Oregon the suspension of the operation of a law may be accomplished by the authority of the legislature: Sec. 22, Art. I, Const. of Oregon, Vol. 1, Oregon Code 1930, p. 82; *Martin v. O. R. & N. Co.*, 58 Or. 198 (113 P. 16).

There is neither space nor reason for citing all the authorities announcing the rule that a purported license is void when issued by a municipality to pursue a vocation prohibited by the general laws of the state. All those coming to the attention of the writer are easily distinguishable from the instant case.

A license was issued in Tennessee to sell cigarettes. The sale of cigarettes was prohibited by the criminal law. The statute authorizing the license limited its effect to the selling of cigarettes "when not sold in violation of criminal law". The court held that plainly there was no intention on the part of the legislature to license sales in contravention of the criminal law: *Blaufield v. State*, 103 Tenn. 593 (53 S. W. 1090).

Another case cited to this point is *State v. Lindsay*, 34 Ark. 372. The constitution of Arkansas provides: "No municipal corporation shall be authorized to pass any laws contrary to the general laws of the state." Oregon has no such constitutional provision.

In Alabama we find the same state of the record: *Hewlett v. Camp*, 115 Ala. 499 (22 So. 137). The constitution of Alabama declares that the general assembly has no power to authorize a municipality to pass laws

inconsistent with the general laws of the state: Sec. 50, Art. IV, Const. of Alabama.

*Loisseau v. State,* 114 Ala. 34 (22 So. 138, 62 Am. St. Rep. 84), cites *Hewlett v. Camp,* supra, and invokes the constitutional provision prohibiting the legislature from authorizing lotteries for any purpose: Sec. 26, Art. IV, Const. of Alabama. *Roach v. Ephren,* 82 Fla. 523 (90 So. 609), is a case wherein the license ordinance was declared to be an arbitrary and unreasonable imposition of tax by ordinance. This question is not presented in the instant case.

The writer dissents.